211 So.2d 311

Salvador J. LENTINI, Individually and as Marshal of the City of Kenner,

v.

The CITY OF KENNER, Edward D'Gerolamo, Mayor, Raymond Dupepe, Lebo Mancuso, Michael Damiano, Joseph Yenni and Anthony Bertolino, Aldermen of the City of Kenner, individually and in their official capacities.

No. 48956.

June 4, 1968.

Rehearing Denied June 28, 1968.

Robert I. Broussard, Gretna, for relator.

James David McNeill, New Orleans, Harold E. Kytle, Kenner, for respondents.

1. Defendants are Edward D'Gerolamo, Mayor, Raymond Dupepe, Lebo Mancuso, Michael Damiano, Joseph Yenni and An-thony Bertolino, Aldermen of the City of Kenner, Individually and in their Official Capacities.

SANDERS, Justice:

Salvador J. Lentini, Marshal of Kenner, Louisiana, instituted proceedings against the City of Kenner, its Mayor and Board of Aldermen[1], to permanently enjoin the enforcement of Sections IV and V of City Ordinance No. 936. Lentini maintains these sections are null and void, because they deprive him of the inherent powers of his office. The Twenty-Fourth Judicial District Court, Jefferson Parish, granted a permanent injunction. The Court of Appeal reversed the judgment. 202 So.2d 309. On application of plaintiff, we granted certiorari. 251 La. 405, 204 So.2d 579.

The City of Kenner has a Mayor-Board of Aldermen form of government provided by the Lawrason Act, LSA–R.S. 33:321 et seq. The Mayor, Aldermen, and Marshal are elected officials. The Mayor and the Board of Aldermen exercise the governmental powers of the municipality, LSA–R.S. 33:362, and are ultimately responsible for policing the City, LSA–R.S. 33:401 subd. A(6), 402(4), and 404. In addition, LSA–R.S. 33:401, subd. A(30), gives the Mayor and Aldermen authority to prescribe duties and fix compensation of all officers and employees, "subject to any applicable civil service law."

The Legislature, in LSA–R.S. 33:423, specifically provided: "The marshal shall

be ex-officio a constable. He shall be the chief of police and shall perform all other duties required of him by ordinance." The duties and powers of the chief of police are defined neither by statute or jurisprudence. Because of the nature of his office, however, he is the chief law enforcement officer of the City and, as such, has supervision of the police department.

On November 14, 1966, the Board of Aldermen adopted Ordinance 936. Contested Sections IV and V provide:

"*SECTION IV.* Duties of Marshal and Chief of Police.

(1) Such officer shall conduct such schools as the Board of Aldermen shall order.

(2) Such officer shall be a constable.

(3) Such officer shall personally investigate all felonies committed in the City of Kenner and issue a written report quarterly to the Mayor and Board of Aldermen, describing the status of all felony cases under investigation.

(4) Such officer shall obtain from the Clerk of the 24th Judicial District Court all information of felonies occurring within the boundaries of the City of Kenner filed in said Court and aid in said prosecution and/or investigation necessary to bring said cases to a conclusion.

(5) Such officer shall investigate all abandoned vehicles causing obstruction of public property and make recommendations by report monthly to the Mayor and Board of Aldermen.

(6) Such officer shall have charge of: (a) The central complaint desk and of dispatching of police records. (b) Indentification and custody of property to be used in evidence in Mayor's Court or to be filed with the Clerk of the 24th Judicial District Court for evidence in said Court, or to be filed with the City Clerk for evidence in Mayor's Court of the City of Kenner.

(7) Such officer shall be responsible for the operation of detention quarters and to assure that prisoners are properly cared for.

(8) Such officer shall supervise and have charge of the preparation of Police reports for the prosecution of criminal cases and in cooperation with the City Clerk, to cause witnesses to attend Court.

(9) Such officer shall have supervision of the taking of fingerprints and other techniques of criminal investigation.

*SECTION V.* Duties of the Police Captain (Senior in length of service under Civil Service Laws).

(1) Direct supervision of the motor patrol division and shall have charge of:

(a) The control of traffic and public safety.

(b) Traffic educational program.

(c) Direct raids and make arrests as necessary.

(2) Make all personnel and division assignments and post said assignments on the Police Bulletin Board and file a copy with the City Clerk and with the Marshal.

(3) Keep a list of all special deputies assigned to business or public gatherings. Instruct said deputies in their powers, duties and obligations. File said list with the City Clerk and Marshal.

(4) Be in charge of all City Police property such as motor vehicles so as to assure that vehicles are cared for in accordance with a schedule of preventive maintenance established by the Mayor and Board of Aldermen for City equipment."

Plaintiff contends Section IV of the ordinance curtails his inherent powers, because it restricts his duties to those enumerated in the section. In requiring that he personally investigate all felonies, the section precludes the assignment of other personnel to make such investigations. A further divestiture of authority, he contends, occurs in Section V, which gives the Police Captain the duties of making all personnel assignments and of having charge of all city police property.

The defendants, on the other hand, contend that Section IV assigns only *additional* duties to the Marshal, which the Aldermen are authorized to do under the provisions of LSA–R.S. 33:423. They further assert Section V does not reduce the Marshal's supervisory power over the police department.

Holding the ordinance stripped the Marshal of his inherent powers as Chief of Police, the district court said:

"While the duties assigned are consistent with those normally under the control of the Chief of Police, apparently, it is the intent of this section to restrict his authority to these particular activities, since it contains no provisions reserving any other powers to him.

"In Section 5 of said Ordinance, the direct and absolute control of all police personnel and property is vested in the Police Captain, who is 'Senior in the length of service under Civil Service Laws'. This section makes no reference to the supervisory authority of the Chief of Police and therefore, it must be assumed that the Captain is accountable only to the Board of Aldermen, from whom he derives his authority. It completely removes all personnel and equip-

ment of the department from the control and jurisdiction of the marshal."

In reversing the district court, the Court of Appeal conceded the inherent powers of the Chief of Police could not be divested by Ordinance, but stated:

"A mere reading of Section IV of the ordinance discloses to us, contrary to the conclusions of the Court below, that its provisions are not exclusively functions which attend the office of Marshal, Chief of Police or Constable, but are to to considered additional duties to these functions, and that Section V assigns certain specific supervisory duties to the Police Captain for which he is responsible to the Mayor and Board of Aldermen and not the Marshal. * * *

"* * * the plain wording of R.S. 33:401(30) does not except the office of the Marshal and Chief of Police or the Captain from this authority. The fact that the Marshal is an elected official does not alter the jurisdiction of the Mayor and Board of Aldermen over his duties. * * *"

We agree with the district court.

▮ Section IV of the ordinance enumerates nine specific duties of the Marshal, including the duty of personally investigating all felonies. Nowhere in the ordinance do we find language indicating these prescribed duties are nonexclusive or additional. Hence, as we construe it, the section is restrictive.

▮ Section V specifically vests the power of making personnel and division assignments in the Police Captain. It also gives the Police Captain charge of all city police property. Although defendants contend the Police Captain will perform these duties under the supervision of the Chief of Police, we find no language in the ordinance reserving this supervisory authority. The language of the ordinance, by which we are bound in our consideration of this case, deprives the Chief of Police of his authority to control the property and assign personnel in the police department.

We conclude, as did the district court, these sections of the ordinance divest the power and authority of the Marshal as Chief of Police.

▮ Municipalities derive their powers from the State. Being creatures of this higher authority, they cannot legislate beyond the bounds fixed by the State Constitution and general laws. Randolph v. Village of Turkey Creek, 240 La. 996, 126 So.2d 341. We have found no state statute authorizing the Board of Aldermen to revoke the inherent powers of the Marshal. Hence, the contested sections are *ultra vires* acts of the Board of Aldermen and, as such, are null and void.

▮ Defendants contend, however, that an injunction should not issue, because they have performed no overt act to enforce or execute the ordinance. LSA–C.C.P. Ar-

ticle 3601 provides that an injunction shall issue when irreparable injury, loss, or damage may otherwise result to the applicant. Without injunctive relief, the plaintiff would be in the dilemma of violating the ordinance or abandoning the powers of an office to which he has been duly elected. The enactment of the ordinance, in our opinion, is sufficient to justify injunctive relief. See Connell v. Commission Council of City of Baton Rouge, 153 La. 788, 96 So. 657; Adams v. Forsyth, 44 La.Ann. 130, 10 So. 622; and State ex rel. Forsyth v. Ellis, 42 La.Ann. 1104, 8 So. 305.

For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated and made the judgment of this Court.