321 So.2d 774 (1975)
Harold COGSWELL, Plaintiff-Appellee,
v.
TOWN OF LOGANSPORT et al., Defendant-Appellant.
No. 12691.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1975.
*777 W. Charles Brown, Mansfield, for defendant-appellant.
Gamble & Sledge by Jack R. Gamble, Jr., Mansfield, for plaintiff-appellee.
Before BOLIN, HALL and MARVIN, JJ.
MARVIN, Judge.
The mayor and board of aldermen of Logansport appeal from a judgment enjoining the enforcement of a recently adopted ordinance which attempted to define and require among other things, "additional duties" of the Marshal and Chief of Police of Logansport, Harold Cogswell, appellee herein who successfully sought the injunction.
Logansport is classified as a town under the Lawrason Act, Act 136 of 1898, as amended, now R.S. 33:321 et seq. This is the general municipal incorporation law of Louisiana which classifies and bestows powers and privileges upon municipalities according to population, of which the Court is required to take judicial notice.[1] See R.S. 33:341, 345.
The court below held that the ordinance "strips" the chief of police of the inherent power over and general responsibility for law enforcement to which he is entitled as the elected marshal and chief of police.
The mayor and aldermen contend that the law generally empowers them to prescribe the duties of all officers; that such an ordinance is specifically authorized by R.S. 33:423, which provides that the marshal and chief of police ". . . shall also perform all other duties required of him by ordinance."; and that the ordinance in question speaks only of "additional" duties and does not limit or infringe upon the inherent powers afforded the marshal and chief of police as an elected official.
One section of the statute which we are called on to construe is the former section 25 of the Lawrason Act which was incorporated into the Revised Statutes as R.S. 33:423, and amended by Act 120 of 1970. As originally enacted in 1898, this section read:
"The marshal shall be ex-officio a constable. He shall be the chief of police thereof, and shall perform all other duties required of him by ordinance." Acts 1898, No. 136, § 25.
*778 Since the 1970 amendment, the statute reads as follows:
"The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall also perform all other duties required of him by ordinance." R.S. 33:423.
Between 1898 and 1970, there were several cases[2] and numerous published opinions of the Attorney General of Louisiana[3] wherein there was considered the respective rights, powers, duties and responsibilities of the mayor, the aldermen and the marshal-chief of police of municipalities which were incorporated under the Lawrason Act.
In a 1968 decision, the Supreme Court noted that the duties and powers of the chief of police of a Lawrason Act municipality were not defined by statute or by jurisprudence, but observed:
"Because of the nature of his office, however, he is the chief law enforcement officer of the City and, as such, has supervision of the police department."Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311, 312 (La.1968).
These powers and duties are often referred to as "inherent powers" and it is an established principle that the mayor and aldermen may not revoke the "inherent powers" of an elected chief of police of a Lawrason Act municipality. See Lentini, supra, page 314. Except for the above quoted language from Lentini and in Act 120 of 1970, now R.S. 33:423, the inherent powers of an elected chief of police have not been defined in Louisiana insofar as we are able to determine. Act 120 of 1970, in language similar to that used by our Supreme Court in Lentini, states in part that the chief of police
". . . shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. . ." R.S. 33:423.
This act was one of five acts of the 1970 Legislature which amended parts of the Lawrason Act of Title 33.[4] Act 120 of 1970 in its last sentence, reiterates the language of former section 25 of the Lawrason Act in expressly providing that the chief of police:
". . . shall also perform all other duties required of him by ordinance." R.S. 33:423.
Other sections of the Lawrason Act, as amended and contained in Title 33, are pertinent here. Section 401 grants to the mayor and aldermen the power
". . . (6) To make all police regulations necessary for the preservation of good order and peace of the municipality. . .
". . . (30) . . . to prescribe the duties . . . of all officers and employees . . .

*779 ". . . (31) To provide for the removal of officers and discharge of employees for misconduct or neglect of duty . . ."
Section 402 grants "additional powers" to the mayor and aldermen
". . . (2) To adopt measures which are deemed necessary or proper for the protection of . . . the traveling public . . . .
". . . (4) To establish, regulate, and support . . . police and define the duties thereof . . ."
Section 404 states that the mayor
". . . shall have the superintending control of all offices and affairs of the municipality; shall actively and vigilantly see that all the laws and ordinances are properly executed and enforced. . . He may require any officer of the municipality to exhibit his accounts or other papers, and to make report to the board of aldermen, in writing, on any matter pertaining to his office. He shall cause all other officers to be dealt with promptly for any neglect or violation of duty . . ."
Section 401(A) vests in the mayor and aldermen the "care, management, and control of the municipality and its property and finances."
We apply here
". . . [the] recognized rule of statutory construction that the act as a whole ought to be interpreted so that no clause, sentence, or word shall be superfluous, or meaningless, if that result can be avoided." Bartley, Incorporated v. Town of Westlake, 237 La. 413, 111 So.2d 328, 333 (1959).
In Lentini, the City of Kenner adopted an ordinance which imposed certain duties on its chief of police and other duties on the senior police captain. The chief of police there sought to enjoin enforcement of the ordinance on the grounds that his duties were restricted or exclusively limited to those enumerated in the ordinance and that the duties assigned to the senior police captain divested the chief of police of his general and inherent power of supervising the police department. The Supreme Court agreed in this language:
"[1] Section IV of the ordinance enumerates nine specific duties of the Marshal, including the duty of personally investigating all felonies. Nowhere in the ordinance do we find language indicating these prescribed duties are nonexclusive or additional. Hence, as we construe it, the section is restrictive.
"[2] Section V specifically vests the power of making personnel and division assignments in the Police Captain. It also gives the Police Captain charge of all city police property. Although defendants contend the Police Captain will perform these duties under the supervision of the Chief of Police, We find no language in the ordinance reserving this supervisory authority. The language of the ordinance, by which we are bound in our consideration of this case, deprives the Chief of Police of his authority to control the property and assign personnel in the police department." Lentini, supra, 211 So.2d page 314 (Emphasis supplied)
We believe the statutory design, especially as reiterated in the 1970 amendments, and the jurisprudence are clear. The "general responsibility for law enforcement" granted the chief of police by section 423 means the power to supervise the operation of the police department and assign its personnel and equipment, subject to the statutory authority which may be exercised by the mayor and aldermen under other sections of the Lawrason Act, as amended.
Being generally empowered to prescribe duties of municipal officers and employees *780 by section 401, and to require by ordinance the performance of "other duties" by the chief of police[5] by section 423, the mayor and aldermen of a Lawrason municipality may exercise their authority over an elected chief of police and the police department as long as the power of the chief of police to supervise the operation of the department and assign its personnel and property is not revoked, restricted or limited.
In the context of these principles, we shall examine the ordinance in question which we reproduce as an appendix to this opinion.
Unlike the ordinance in Lentini, the ordinance in this case states that the duties prescribed therein are "[i]n addition to the powers, duties and responsibilities imposed upon the chief of police . . ., by the laws and statutes of this state . . ." Sec. I(B).
Sec. I(C) requires nothing more than Art. 228, La.C.Cr.P.
Sec. I(D) is authorized by R.S. 33:404.
Sec. I(E) implements the provision of R.S. 33:403(4) that "all mayors shall have the power of committing magistrates" and the provisions of Title 8 of the Code of Criminal Procedure relative to bail.
Sec. I(F) adopts what apparently is recognized procedure for the hiring of personnel by a municipality. In the interest of efficiency, certainly the chief of police should be required to recommend personnel to the hiring authority. See Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962), for a discussion on hiring authority of a Lawrason municipality.
Sec. I, sub-parts (G)(H) and (L) implement that part of R.S. 33:401(A) relating to control over municipal property and directs the chief of police to exercise his statutory supervisory power over the police department.
Sec. I(I) does not revoke or restrict the inherent powers of the chief of police but assigns him what could legally be called "other duties" of maintaining the town jail. This is clearly in accord with R.S. 33:423.
Sec. I(J) relegates the chief of police, an official of the town, to the status of a policeman, an employee of the town, when the chief is working a "duty shift".
The elected chief of police is an "officer" of the town and may not be relegated to the status of an employee. See R.S. 33:381. This does not mean however, that the mayor and alderman may not assign certain duties to the chief of police and to policemen-employees as well, within the guidelines discussed herein. Some of the duties imposed on policemen in Section III of this ordinance, as shall be discussed hereafter, can be imposed on the chief of police as well.
Sec. I(K) requiring the chief to attend regular meetings of the aldermen is obviously in the interest of governmental efficiency and does not revoke or restrict the inherent powers of the chief of police.
Sec. II, "Additional Duties of Assistant Chief of Police", pertains only to the assistant chief of police and does not revoke or restrict the inherent powers of the chief of police in any way. The requirements of sub-part (C) are discussed hereafter under section III of the ordinance.
Sec. III imposes certain duties on policemen which by Section I(J) are also imposed on the chief of police. We shall discuss which of these duties may lawfully be imposed on the employees-policemen and on the chief of police.
Sec. III(A) distinguishes between ordinances of the town and "lawful directives" *781 of the mayor and aldermen and of the chief of police. While a policeman certainly can be ordered by the chief of police who has routine supervisory power, the mayor or the aldermen cannot interpose themselves between the chief and the policemen as to law enforcement responsibility so as to restrict the supervisory power of the chief of police. This section of the ordinance is valid under this construction subject to our holding on other subparts of Section III.
Sec. III(B) is an exercise of the authority granted by R.S. 33:404 and may be imposed on the chief as well as the policemen.
Sec. III(C) restricts the supervisory powers of the chief of police in that policemen may be instructed by the chief to maintain radio silence under several conceivable circumstances necessary to good law enforcement. It would not be an unreasonable restriction however, for the town to provide by ordinance that the chief of police shall adopt and implement procedures whereby the whereabouts of each policeman would be known at all times by either the chief of police or, in his absence, the superior duty officer.
Sec. III(D) is another example of "other duties" which may be imposed on the chief of police or policemen under R.S. 33:423 and 401, subd. A(30).
Sec. III(E) is a reiteration of the requirements of Art. 228, La.C.Cr.P., which may be imposed on the chief of police and the policemen.
Sec. III(F), (G)(1), (2), (3) and (6) seek to require policemen to perform certain duties for specific periods of time. These requirements restrict the inherent supervisory powers of the chief of police. It would not be a restriction however, for the town to require by ordinance the chief of police to adopt and implement procedures which would provide for periodical parking meter checks, radar speed checks, red light checks and driver's license checks.
Sec. III(G)(4) is a valid exercise of the authority granted the mayor and aldermen by R.S. 33:402(4) "to establish, regulate, and support night watch and police and define the duties thereof . . ."
Sec. III(G)(5) is a valid exercise of the authority granted by R.S. 33:401(A) relating to control of municipal property. See discussion of Sec. I(H) of the ordinance.
Sec. III, sub-parts (H) and (I) do not revoke or restrict the inherent supervisory powers of the chief of police.
Sec. IV(A) does not restrict or revoke the inherent supervisory powers of the chief of police.
Sec. IV(B) is nothing more than a declaration to the effect that the chief of police, as a public officer, is subject to such laws as R.S. 14:134, for the intentional non-performance of his lawful duties.
Appellee answered the appeal and seeks damages from appellants for a frivolous appeal. It is perhaps superfluous to state that this contention is without merit.
For the reasons expressed, the judgment of the lower court enjoining the enforcement of the ordinance in question is reversed. Under the authority of La.C.C.P. Art. 2164, we declare ultra vires and invalid those subsections of the ordinance, namely Sections I(J), III(C), III(F), III(G)(1), (2), (3) and (6), only insofar as they are construed to restrict the inherent supervisory powers and the general responsibility for law enforcement granted the elected chief of police of the Town of Logansport, as expressed herein.
Costs of this appeal are assessed against appellant, Town of Logansport, to the extent that a municipality may be required to pay costs.

*782 APPENDIX

EXHIBIT "A"

ORDINANCE NO. 275
AN ORDINANCE PRESCRIBING ADDITIONAL DUTIES OF CHIEF OF POLICE, ASSISTANT CHIEF OF POLICE, AND POLICEMEN OF THE TOWN OF LOGANSPORT, LOUISIANA
BE IT ORDAINED by the Mayor and Board of Aldermen of the Town of Logansport, Louisiana, as follows, to-wit:
SECTION I. Additional Duties of Chief of Police and Marshal.
A. The Chief of Police shall also be the Marshal of the Town of Logansport, Louisiana.
B. In addition to the powers, duties, and responsibilities imposed upon the Chief of Police and Marshal of the Town of Logansport, Louisiana, by the laws and statutes of this State, the Chief of Police and Marshal shall also perform the duties enumerated in this Ordinance.
C. The Marshal and Chief of Police of the Town of Logansport, Louisiana, shall keep and maintain a Jail Record Book. He shall be responsible for keeping the Jail Record Book current; insuring that the said Jail Record Book contains a record of each occasion on which a person is confined in or discharged from the Town Jail.
D. The Marshal and Chief of Police of the Town of Logansport, Louisiana, shall himself submit a Daily Report for each daily shift or period worked by him to the Town Clerk on a form supplied by the Mayor and Board of Aldermen of the Town. The Marshal and Chief of Police of the said Town shall also insure that each member of the Logansport Police Department submit a Daily Report for each shift or period worked by each member of the Police Department. The said Daily Report shall be filed with the Town Clerk at the end of each shift or period worked by the Policemen of the Town or the Chief of Police and Marshal.
E. The Marshal and Chief of Police shall, whenever he makes any arrest, request the Mayor or in his absence, the Mayor Pro-Tempore of the Town of Logansport, Louisiana, to fix the amount of the appearance bond prior to releasing any arrested person. The Marshal and Chief of Police shall also obtain the approval of any and all appearance bonds, other than cash bonds, by the Mayor or Mayor Pro-Tempore, prior to the release of any person arrested by the Marshal and Chief of Police. The Marshal and Chief of Police shall insure that the same procedure on appearance bonds is followed and adhered to by the Policemen of the Town of Logansport, Louisiana.
F. The Marshal and Chief of Police of the Town of Logansport, Louisiana, shall have no authority to hire Policemen for the Town of Logansport, Louisiana. He shall, however, make recommendations on the hiring of Policemen to the Mayor and Board of Aldermen of the said Town upon their request.
G. Whenever a Policeman is fired or suspended from his employment by the Town of Logansport, Louisiana, the Marshal and Chief of Police shall be responsible for the return of all property of the said Town by the fired or suspended Policeman.
H. The Marshal and Chief of Police shall be responsible for the custody of all items of property seized in connection with an arrest made by him or by the Policemen of the said Town. He shall report to the Town Clerk all items of property so seized *783 by the Policemen of the said Town and so seized by him and shall insure that all items of property are reported to the Town Clerk. The Marshal and Chief of Police shall insure that such items of property are promptly delivered to the Court of proper jurisdiction when requested to do so.
I. The Marshal and Chief of Police shall be responsible for the operation of the Town Jail and to assure that prisoners therein are properly fed and cared for.
J. When the Marshal and Chief of Police is working a police duty shift, he shall perform all the duties required of a Policeman for the Town of Logansport, Louisiana, by this Ordinance, by all other Ordinances, and by all applicable State laws in addition to his duties as Marshal and Chief of Police.
K. The Marshal and Chief of Police shall attend all regular meetings of the Mayor and Board of Aldermen of the Town of Logansport, Louisiana. He shall also attend Special Meetings of the said Mayor and Board of Aldermen when requested to do so by the Mayor of the said Town.
L. Subject to the restrictions and limitations set forth below, the Chief of Police and Marshal of the Town of Logansport, Louisiana, shall have control and supervision over the property and equipment of the Police Department.
(1). The Chief of Police, nor any member of the Police Department shall dispose of or convert to private use any property or equipment of the said Department.
(2). All alterations, repairs, maintenance, and purchases of the Police Department equipment and property, shall be made only after an approved purchase or work order has been secured from the Town Clerk.
(3). All property and equipment of the Police Department shall be used for law enforcement. The use of any Police Department property or equipment for such purposes shall neither cease nor be discontinued without the approval of the Mayor and Board of Aldermen.
(4). The Marshal and Chief of Police shall be responsible for maintaining the property and equipment of the Police Department in a good state of repair.
SECTION II. Additional Duties of Assistant Chief of Police.
A. The Assistant Chief of Police shall assist the Marshal and Chief of Police of the Town of Logansport, Louisiana, in the performance of the duties of the Marshal and Chief of Police required herein and required by all other Ordinances of the said Town, and by all applicable State laws.
B. In the absence of or incapacity of the Marshal and Chief of Police, the Assistant Chief of Police shall perform all the duties of the Marshal and Chief of Police required by this Ordinance, by all other Ordinances of the Town, and by applicable State laws.
C. When the Assistant Chief of Police is working a police duty shift, he shall perform the duties required of a Policeman by this Ordinance, by all other Ordinances of the Town, and by applicable State laws in addition to performing the duties required of him as Assistant Chief of Police.
SECTION III. Additional Duties of policemen of Town of Logansport, Louisiana.
A. In addition to the duties required of Policemen by and for the Town of *784 Logansport, Louisiana, by applicable State laws, and by other Ordinances of the said Town, Policemen shall obey and perform all lawful directives and orders of the Mayor, Board of Aldermen, and of the Marshal and Chief of Police of the Town of Logansport, Louisiana.
B. Policemen of the Town of Logansport, Louisiana, shall prepare and file a Daily Report on a form supplied by the Mayor and Board of Aldermen of the said Town of each shift or period worked by them.
C. Policemen on duty shall report their location by radio or telephone at anytime they leave the police car.
D. Policemen shall report to the Town Clerk all damaged or missing street signs, stop signs, and yield signs observed by them or reported to them during their duty shifts. Policemen shall also report to the Town Clerk any and all dangerous conditions on the streets of the Town of Logansport, Louisiana, observed by them or reported to them during their duty shifts and shall likewise report any and all damages to the streets of the Town of Logansport, Louisiana, observed by them or reported to them during their duty shifts.
E. Policemen shall make all current and proper entries in the Jail Record Book during their duty shifts.
F. Two (2) Policemen shall work together during all duty shifts, Friday, Saturday, and Sunday nights.
G. The following duties shall also be performed by the Policemen of the Town of Logansport, Louisiana, unless they are unable to do so due to an emergency, to-wit:
1. Check for parking meter violations once each hour of their duty shifts when their duty shifts coincide with the hours of parking meter use and enforcement.
2. Perform systematic radar checks every Friday, Saturday, and Sunday for a minimum of two (2) hours each day on all highways located within the corporate limits of the Town of Logansport, Louisiana.
3. Work all red lights one (1) hour in the morning and one (1) hour in the afternoon.
4. Check doors of all merchants and businesses within the corporate limits of the said Town once every night to see if they are locked, etc.
5. Policemen are charged with the responsibilities and duties set forth in Section I., Sub-section H., of this Ordinance in regard to items of property seized in connection with all arrests made during their duty shifts.
6. Check motorists for current drivers licenses on highways within the corporate limits of the Town of Logansport, Louisiana, a minimum of two (2) hours per week.
H. Policemen shall not loiter about the Police Station or at the Town Hall at any time and shall not allow other persons to loiter about the Police Station.
I. Without limitation on the foregoing duties and responsibilities the Policemen of the Town of Logansport, Louisiana, shall enforce all Ordinances of the said Town and all applicable State laws.
SECTION IV. Enforcement of Ordinance.
A. Any Policeman or Assistant Chief of Police who fails to comply with this Ordinance may be fired to suspended from duty.
B. Non-compliance with this Ordinance by the Marshal and Chief of Police *785 may result in legal action against him under any applicable State law or statutes.
SECTION V. Severability of Provisions, Clauses, and Sentences, of Ordinance and Repeal of Conflicting Ordinances.
A. All the provisions, clauses, and sentences of this Ordinance are severable and should any provision, clause or sentence be declared void all other provisions, clauses, and sentences of this Ordinance shall remain in full force and effect.
B. All Ordinances or portions thereof in conflict with this Ordinance are hereby repealed.
SECTION VI. vote on Ordinance.
The vote on this Ordinance was as follows:

NOTES
[1] The 1970 Census shows the population of Logansport as 1,330.
[2] State ex rel. Gentry v. Mayor, Etc. of Village of Dodson, 123 La. 903, 49 So. 635 (1909); Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962); and Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968).
[3] See generally, published opinions of Attorney General of Louisiana, and annotations under West's L.S.A., R.S. 33:321 et seq. Two of such opinions were introduced as evidence into this case: Opinion No. 74-1162 of August 12, 1974, to the Chief of Police of Sterlington, and Opinion No. 75-072, of January 23, 1975, to the Chief of Police of Logansport.
[4] See Act 119, relative to duties of the mayor; Act 121, relative to the creation and alteration of wards; Act 122 relative to vacancies in municipal offices, and Act 123 extending the powers of mayors and aldermen.
[5] For instance, Act 123 of 1970 (R.S. 33:402 (9)) authorizes the mayor and alderman to appoint a fire marshal "who may be" the chief of police.