Dear Mr. Coenen:
You have requested an opinion of the Attorney General in your capacity as Attorney for the Town of Rayville (Town), regarding the procurement of radio equipment by the Town's Police Department (Department). The Town is a Lawrason Act municipality and the Department is headed by an elected Chief of Police (Chief).
You state that in June, 1996, under the former Chief's administration, the Department entered into two separate five-year lease-purchase agreements with EPI Leasing Company for radio equipment. Each contract stipulates five annual lease payments of $1,124.88 and $1,968.21 respectively.
The Town was not a party to, nor was it apprised of the two contracts. The Town was presented with two purchase orders and corresponding invoices by the Department which were paid. A review of the documents reflects that the amounts correspond to the annual lease payments stipulated in the contracts. The payments were made from unrestricted funds budgeted and appropriated by the Town to the Department.
Finally, you state that the procurement of the radio equipment under the two lease-purchase agreements was not conducted pursuant to the state's Public Bid Law. (R.S. 38:2211, et seq.).
You first ask whether the Chief, or a designee thereof (e.g., assistant chief of police), is authorized to enter into two five-year lease-purchase agreements for radio equipment without the approval of the Mayor and Board of Aldermen.
It has consistently been the opinion of this office that an elected chief of police (chief) has, pursuant to R.S. 33:423, the inherent power and authority to supervise and control his office, equipment and personnel on a day-to-day operational basis. InDoyle v. City of Harahan, 610 So.2d 272 (La.App. 5th Cir. 1992), the Court, citing Attorney General Opinion No. 86-589, held:
 We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. This is consistent with the Second Circuit's ruling, on other facts, in Cogswell v. Town of Logansport, 321 So.2d 774 (La.App. 1975), that the chief of police has "the power to supervise the operation of the police department and assign its personnel and equipment . . . ." He is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots.
See also Attorney General Opinion Nos. 97-203, 96-389, 95-135 and 94-538.
This office has also observed that a chief's inherent authority is limited in its application by operation of certain statutory authorities granted the mayor and board of aldermen. Thus, for example, a chief is subject to the requirement that the expenditure of police department funds be made only pursuant to, and in accordance with, specific appropriations from a budget approved by the governing authority. R.S. 33:462 and Attorney General Opinion Nos. 97-203, 95-275, 95-135 and 94-538.
In Cogswell the court observed, with respect to the interaction between the powers of a mayor and board of aldermen and an elected chief of police:
 We believe the statutory design, especially as reiterated in the 1970 amendments and the jurisprudence are clear. The "general responsibility for law enforcement" granted the chief of police by section 423 means the power to supervise the operation of the police department and assign its personnel and equipment, subject to the statutory authority which may be exercised by the mayor and aldermen under other sections of the Lawrason Act, as amended. [Emphasis added.]
We specifically opined that a chief is subject to a municipality's regulations for the use of purchase orders, citing R.S. 33:425. See Attorney General Opinion No. 93-75.
In Attorney General Opinion No. 97-153, this office, while recognizing the chief's inherent authority over the department, noted that the department is not a political subdivision of the state, but only a unit of the town. Accordingly, we concluded that a "task force" contract between neighboring municipal police departments to perform special operations would require the approval of the respective municipal governing authorities.
In Attorney General Opinion No. 95-464, we concluded that the general responsibility of law enforcement by the chief does not extend to the unilateral hiring of an attorney solely for the guidance of the police department. Such a transaction would require the approval of the municipality's governing authority. In accord is Attorney General Opinion No. 95-464.
The following issue was addressed in Attorney General Opinion No. 93-283, to wit: If a parish sheriff's department can enter into a contract with a town to furnish law enforcement activities and the elected chief concurs therewith, can the chief enter into the contract on his own initiative without the concurrence of the Town's governing authority? We concluded:
 Under the provisions of LSA-R.S. 33:404(4), the mayor of a Lawrason Act Municipality has the power, duty, and responsibility "to sign all contracts on behalf of the municipality" However, relying on Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946), in Attorney General's Opinion No. 90-616, this office opined that:
 The Board's legislative powers include control over the municipal fisc, and their express or implicit authorization is required for all public expenditures.
 Therefore, it appears that if a Lawrason Act Municipality entered into a contract with the parish sheriff to furnish law enforcement services, and if that contract involved the expenditure of funds belonging to the municipality, both the mayor and the board of aldermen would have to concur in the contract and the mayor would sign it on behalf of the municipality.
We have been unable to find a case or an opinion directly on point regarding the authority of the Chief to unilaterally execute two five-year lease-purchase contracts for the purchase of radio equipment. However, guided by the above case law and opinions, we are of the opinion that the inherent authority of the Chief to supervise and control his office, equipment and personnel, on a day-to-day operational basis, does not include the unilateral execution of the contracts at issue.
While the Chief should clearly have the authority to determine the need for the additional radio equipment and the allocation of same, once received, we believe that its procurement, via
lease-purchase contract, requires the approval of the Town's governing authority. We turn now to your next question, to wit: Is the Town, itself, obligated under the terms of the two contracts? We answer this question in the negative.
Initially, we cite the general jurisprudential rule that a mayor, acting alone, is without power to execute a contract binding on a city or town in the absence of an ordinance or resolution by the governing authority authorizing him to do so. Sunray Services,Inc. v. City of Minden, 690 So.2d 970 (La.App. 2nd Cir. 1997), rehearing denied and Daspit v. City of Alexandria, 342 So.2d 683
(La.App. 3rd Cir. 1977), writ refused.
In the matter before us, the Chief executed the lease-purchase contracts without the knowledge of the Mayor or Board of Aldermen. We find the rationale in Sunray to be equally applicable to the Chief. We believe that the one-time payment of the two invoices, upon presentation of the purchase orders, constitutes neither express and/or tacit ratification of the contracts by the Town. The Mayor and Board of Aldermen were unaware that the Department had entered into the two lease purchase agreements.
In addition, and as noted at the outset of this opinion, the lease-purchase agreements were entered into by the Department without advertisement and bidding.
R.S. 38:2212 requires that all purchases of materials and supplies exceeding the sum of $10,000[1] to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder. This statutory mandate applies to the lease-purchase of radio equipment by the Department. Attorney General Opinion Nos., 88-62, 85-229, 84-418, 83-544, 81-452 and 78-1145.
A review of the two contracts reveals the total cost of the equipment to be $15,465.45, well above the $10,000 threshold. Accordingly, we find that the agreements were entered into by the Department in violation of the state's Public Bid Law, subjecting the contracts to the provisions of R.S. 38:2220 which provide, in pertinent part:
 § 2220. Purchase or contract contrary to provisions of Part void
 A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
In summary, it is the opinion of this office that the elected Chief of Police for the Town of Rayville, or his designee, cannot unilaterally enter into two five-year lease-purchase contracts for radio equipment without the approval of the Town's governing authority.
Further, the Town is not responsible for the unilateral/unauthorized obligations incurred under the two agreements. The agreements were not expressly and/or tacitly ratified by the Town, nor were they executed in compliance with the state's Public Bid Law.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla
Date Received:
Date Released:
Robert E. Harroun, III
Assistant Attorney General
[1] At the time these lease-purchase contracts were executed, the amount triggering the bid law was $10,000. Subsequently, the law was amended to increase the threshold to the present $15,000.