Dear Chief Burns:
You have presented several questions to this office by way of recent correspondence, all of which are prompted by an ongoing dispute between you and the mayor concerning control over police department funds.
Before addressing these questions directly, we first would ask you to review Attorney General Opinion 98-438, copy enclosed, which contains an excellent discussion of the authority of the governing body of a Lawrason Act municipality, such as the Town of Walker, vis-a-vis an elected police chief, regarding the use of municipal funds allocated the police department. The opinion is applicable in all respects to you in your official capacity.
At the outset, it is appropriate to set forth the law governing you in your capacity as elected chief of police, the mayor, and the board of aldermen concerning expenditures of monies designated for use by the police department. An elected chief of police has, pursuant to R.S. 33:423,[1] the inherent power and authority to supervise and control his office, equipment and personnel on a day-to-day basis. In Doyle v. City of Harahan, 610 So.2d 272 (La.App. 5th Cir. 1992), the court concluded:
 We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. Doyle, supra, at page 273.
Also of importance is the court's ruling in Cogswell v. Town ofLogansport, 321 So.2d 774 (La.App. 1975), wherein the court held that the chief of police has the "power to supervise the operation of the police department and assign its personnel and equipment . . ." Cogswell, at page 779.
In reliance upon the above cited cases, this office has previously concluded that the chief of police is in the best position to determine whether or not his department needs items as diverse as police cars or roof repairs, radio equipment or parking lots. See Attorney General Opinions 97-203, 96-135, 95-135 and 94-538.
However, a chief's inherent authority is limited in its application by operation of certain statutory authorities granted the mayor and board of aldermen. For example, a chief is subject to the requirement that the expenditure of police department funds be made only pursuant to, and in accordance with, specific appropriations from a budget approved by the governing authority. See R.S. 33:462[2] and Attorney General Opinions 97-203, 95-275, 95-135 and 94-538.
A chief of police is subject to a municipality's regulations for the use of purchase orders. See R.S. 33:425[3] and Attorney General Opinion 93-75.
A mayor, acting alone, is without power to execute a contract binding on a city or town in the absence of an ordinance or resolution by the governing authority authorizing him to do so.Sunray Services, Inc. v. City of Minden, 690 So.2d 970 (La.App. 2nd Cir. 1997), and Daspit v. City of Alexandria, 342 So.2d 683
(La.App. 3rd Cir. 1977), writ refused, 344 So.2d 1056 (La. 1977). The rationale in Sunray, supra, has been found by this office to be equally applicable to the chief of police. See Opinion 98-438. The chief therefore does not have the legal authority to unilaterally execute contracts for expenditures which are unauthorized by the municipal governing authority.
Your questions also prompt us to address the issue of whether the Chief has check signing authority. LSA-R.S. 33:404 sets forth the mandatory duties, powers and responsibilities of the mayor. It provides in pertinent part:
 A. The mayor shall have the following powers, duties, and responsibilities:
* * * * *
 (8) To sign warrants drawn on the treasury for money, to require that the municipal clerk attest to such warrants, to affix the municipal seal thereto, and to keep an accurate and complete record of all such warrants. (Emphasis added).
This office has previously concluded that R.S. 33:404 vests the authority for signing checks solely within the mayor as the executive officer and administrator of the municipality. See Attorney General Opinion 92-174.
Further, there is no authority for the chief to establish a separate fund for the deposit of monies generated by the municipal police department. The control, appropriation, and payment of expenses of the police department are within the power of the mayor, board of aldermen, and the Treasurer of the City. See Attorney General Opinions 92-720 and 87-540.
The authority of the chief regarding operational control over the expenditures of his department, within the line item perimeters of his budget, was addressed in Doyle, supra, and by Attorney General Opinions 83-257 and 86-589. As noted in these opinions cited, once funds are budgeted and appropriated, the chief has operational control over the expenditures for his department within the perimeter of the appropriation.
Your questions also prompt us to define the recourse available to the chief in the event he makes a purchase within budget guidelines, but payment for same is refused. As previously stated, our courts have recognized that the chief has the inherent authority to control police department funds on a day-to-day basis. It remains the opinion of the office that the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon these inherent powers, absent the failure of the chief to comply with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion 93-75.
Turning to your specific questions, and in response to your first question, it is always ill-advised to enter into a "verbal" contract with any person or organization, as same are rarely, if ever, enforceable. While you have the inherent authority to make the decision to repair the police unit or other equipment, such authority may only be legally utilized if it is done so in compliance with municipal regulations for the use of purchase orders and/or requisitions.
We respond to your second question in the negative. A refusal by the mayor to give you a purchase order book would constitute an infringement upon your inherent authority to control your department funds, once the funds are allocated for the police department by the mayor and board of aldermen.
In response to your third question, you must follow all municipal regulations concerning the completion of requisitions.
In response to your fourth question, the mayor can not delegate to the Town Clerk a responsibility which is charged you in your elected position as chief of Police, nor can he invest the Town Clerk with powers held only by another elected official. You remain the only official authorized to make decisions concerning disbursement of municipal funds allocated the police department, and you are the person charged with the responsibility to submit the appropriate paperwork to the municipality for payment.
Our response to your fifth question is in the negative. The police department of a Lawrason Act community with an elected chief of police is not subject to the supervision and control of the mayor. If there is a valid municipal appropriation for a budget item for the police department, the mayor has no authority to interfere with the expenditure. The chief of Police's inherent authority to control the day to day operations of the department includes police department funds, and again, the mayor is without authority to spend money from the police department account.
In response to your sixth question, the chief of police has general supervisory power over the police department, which includes the scheduling of the work shifts of all members of the police department. The chief of police is not required to establish specific working hours for himself, but serves on a full-time basis. Attorney General Opinions 95-13, 90-316, 87-696.
In further response to question six, note that law enforcement employees are governed by 29 U.S.C. § 207(K) of the Federal Fair Labor Standards Act with respect to the issue of overtime. See attached Opinions 92-813 and 97-431 which provide further insight.
In response to your seventh question, you may not set up a separate account in which to deposit ticket monies. The fines collected from tickets issued by police should be deposited into the city treasury in accordance with R.S. 33:422[4], and as stated in Opinion 95-118, the deposit is with "no specific designation for exclusive use of the funds for law enforcement purposes." It was observed that in the absence of a local ordinance, "expenditure of fines levied from police tickets remain at the discretion of the local mayor or town council." It was then concluded, "Thus, it is the opinion of this office that a local government is not required under state law to release funds generated by ticket fines to the chief of police to use exclusively for law enforcement purposes." The operating funds of the police department are not proportional to the fines collected, but instead are budgeted by ordinance as the governing authority decides.
In response to your eighth and final question, the mayor, as custodian of a public record, must permit same to be examined when formally asked to do so in accordance with the Public Records Law, R.S. 44:1, et seq. However, these lawsuits are no doubt also available for your examination in the Parish Clerk of Court's office.
We hope the foregoing proves helpful to you. Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Received: Date Released: February 11, 1999
KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
[1] R.S. 33:423 provides:
§ 423. Duties of marshal
A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability as defined in R.S.51:2232(11), or creed.
B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S.33:423.3.
[2] R.S. 33:462 provides:
§ 462. Expenditures pursuant to appropriation; warrants
All expenditures of money for any purpose whatever shall be in pursuance of a specific appropriation made by order and in no other manner and shall be made in accordance with the provisions of R.S. 38:2211 et seq. Every warrant drawn on the treasury shall express on its face to whom issued and for what purpose allowed; and the ordinance authorizing its issue shall be cited by minute book and page, in or upon it.
[3] R.S. 33:425 provides:
§ 425. Duties of treasurer
The treasurer shall receive, safely keep, and pay out according to law, all monies belonging to the municipality. He shall keep accurate accounts of all receipts and disbursements, and shall make report, in writing to the mayor and board of aldermen, at each regular meeting, of the finances of the municipality; shall perform all other duties that may be prescribed by ordinance; and shall pay out money only on the warrant issued by the order of the mayor and board of aldermen.
[4] R.S. 33:422 provides:
§ 422. Clerk to act as auditor; paying fines and forfeitures into treasury; inspection of auditor's books.
The clerk shall be the auditor of the municipality. He shall keep a book in which he shall enter and preserve accounts of each particular fund, and the accounts of each municipal officer. The treasurer shall not receive money from any source until the same has been reported to the clerk and audited, and a receipt warrant issued therefor. All fines and forfeitures shall be reported by the officer collecting the same, immediately after such collection, and be paid into the treasury. The books of the auditor shall be subject to inspection by the taxpayers of the municipality at any time during business hours.