Dear Chief Hoover:
I am in receipt of your request for an Attorney General's opinion. Your letter poses questions concerning the relative powers and duties among an elected chief of police, mayor and board of aldermen in a Lawrason Act municipality.
Your first question deals with an elected police chief's right to make purchases for his department. More specifically, you ask that once the mayor and board of alderman have agreed on a budget, does the mayor have to be consulted for the chief of police to make a purchase of equipment? The answer to your inquiry is well-stated in Attorney General Opinion No. 98-469:
 An elected chief of police has, pursuant to R.S. 33:423, [FN1] the inherent power and authority to supervise and control his office, equipment and personnel on a day-to-day basis. In Doyle v. City of Harahan, 610 So. 2d 272 (La.App. 5th Cir. 1992), the court concluded: We hold that once the mayor and alderman have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. Doyle, supra, at p. 273.
 Also of importance is the Court's ruling in Cogswell v. Town of Logansport, 321 So. 2d 774
(La.App. 2d Cir. 1975), wherein the court held that the chief of police has the "power to supervise the operation of the police department and assign its personnel and equipment . . ." Cogswell at p. 779. In reliance on the above cited cases, this office has previously concluded that the chief of police is in the best position to determine whether or not his department *Page 2 
needs items as diverse as police cars or roof repairs, radio equipment or parking lots. See Attorney General Opinion Nos. 97-203, 96-135, 95-135 and 94-538.
 However, a chief's inherent authority is limited in its application by operation of certain statutory authorities granted the mayor and board of aldermen. For example, a chief is subject to the requirement that the expenditure of police department funds be made only pursuant to, and in accordance with, specific appropriations from a budget approved by the governing authority. See R.S. 33:425 [FN2] and Attorney General Opinion Nos. 97-203, 95-275, 95-135 and 94-538. A chief of police is subject to a municipality's regulations for the use of purchase orders. See R.S. 33:425 [FN3] and Attorney General Opinion No. 93-75.
Based on the cited cases and Attorney General Opinions, the mayor does not need to be consulted. Assuming that the chief of police made the expenditure pursuant to and in conformity with specific appropriations approved by the governing authority, it is the opinion of this office that the chief of police has operational control over the expenditures of his department and therefore does not need further approval from either the mayor or the board of alderman before he makes the purchase of police equipment.
You ask a related question concerning the police chief's recourse if the mayor refuses to act. The only authority that speaks to this issue is Attorney General Opinion No. 98-469 which reads as follows:
 Your questions also prompt us to define the recourse available to the chief in the event he makes a purchase within budget guidelines, but payment for same is refused. As previously stated, our courts have recognized that the chief has the inherent authority to control police department funds on a day-to-day basis. It remains the opinion of this office that the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon these inherent powers, absent the failure of the chief to comply with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75.
The mayor's infringement upon the chief's inherent authority to control the police department could in this office's opinion subject him, the mayor, to a suit for mandamus. Even worse the mayor, as a public figure, could be subjected in relation to the intentional nonperformance of his lawful duties to such laws as the statute relating to malfeasance in office. La. R.S. 14:134. Therefore, once the mayor and board of alderman have agreed on a budget, the police chief has the operational control over the *Page 3 
department expenditures in accordance with, specific appropriations from a budget which was approved by the governing authority.
Your second question involves the prohibition against setting up a separate account for a police department. General speaking, a police chief cannot set up a separate account for a police department. Attorney General Opinion No. 98-469 dealt with setting up a fund and depositing fines from traffic tickets to fund it. In Attorney General Opinion No. 98-469, we opined that:
 [y]ou may not set up a separate account in which to deposit ticket monies. The fines collected from tickets issued by police should be deposited into the city treasury in accordance with R.S. 33:422 [FN4], and as stated in Opinion 95-118, the deposit is with "no specific designation for exclusive use of the funds for law enforcement purposes." It was observed that in the absence of a local ordinance, "expenditure of fines levied from police tickets remain at the discretion of the local mayor or town council." It was then concluded, "Thus, it is the opinion of this office that a local government is not required under state law to release funds generated by ticket fines to the chief of police to use exclusively for law enforcement purposes." The operating funds of the police department are not proportional to the fines collected, but instead are budgeted by ordinance as the governing authority decides.
Thus, based on the foregoing authority, we believe that, absent some local ordinance, the establishment of any separate account presumably to be designated for the use of law enforcement purposes is prohibited.
Your third issue concerns a mayor's authority to change an arrest warrant after it has been issued. As a general rule, a mayor acting as a magistrate has no authority to modify the form or change the contents of an arrest warrant. However, a mayor is authorized to recall a warrant by previous incumbents provided it is not a capital offense or necessarily punishable at hard labor. Attorney General Opinion No. 92-709.
A mayor may act as a magistrate, La. R.S. 33:41. C.Cr.Pro. Art. 202 A. expressly states that "[a] warrant of arrest may be issued by any magistrate. . . ." However, the form and contents of a warrant as described in C.Cr.Pro. Art. 203 are very specific and leave little room for discretion. Art. 203 reads as follows:
 The warrant of arrest shall:
 (1) Be in writing and be in the name of the State of Louisiana; *Page 4 
 (2) State the date when issued and the municipality or parish where issued;
 (3) State the name of the person to be arrested, or if his name is unknown, designate the person by any name or description by which he can be identified with reasonable certainty;
 (4) State the offense charged against the person to be arrested;
 (5) Command that the person against whom the complaint was made be arrested and booked; and
 (6) Be signed by the magistrate with the title of his office.
The warrant of arrest may specify the amount of bail in noncapital cases when the magistrate has authority to fix bail.
No where in the statute is the mayor allowed to modify or alter warrants injudiciously. The statute defining their form and content is tightly woven, and it leaves little doubt that legislators wanted to grant mayors or anyone else little leeway in using warrants. It is the position of this office that a warrant may not be recalled if it states the name of the person to be arrested. A justice of the peace may recall warrants issued by previous incumbents, provided it is not a capital offense or necessarily punishable at hard labor. Attorney General Opinion No. 92-709. Therefore, a mayor acting as a magistrate has no authority to modify the form or change the contents of an arrest warrant, except to recall those issued by previous incumbents on noncapital offenses, or offenses punishable at hard labor.
Your fourth question involves whether a governing authority may enact a municipal ordinance allocating to the police department's budget a percentage of fines or court costs, or both, imposed by the mayor's court. This office has long held that absent an ordinance to the contrary, fines and court costs imposed by the mayor's court shall be paid into the town's treasury. However, it follows that municipalities that do enact ordinances designating that fines and court costs or portions thereof shall be deposited or allocated to other municipal treasuries for other municipal purposes including law enforcement. Attorney General Opinion No. 87-255.
The answer to your fifth question is codified in La. R.S.33:4712. This statute provides, in pertinent part, that police equipment may be sold by the municipality as long as the municipality follows the statutory guidelines set forth in La. R.S. 33:4712(B). The statute further provides that the proceeds from the sale must be put into the treasury of the governing authority. Without specific statutory authorization, the deposit is with no specific designation for exclusive use of the funds for law enforcement purposes. Attorney General Opinion No. 98-469. *Page 5 
For the purposes of clarity, we now take question number 14 out of order, for reasons that will become clear later, and address it at this time. Your question number 14 deals with budgetary matters, in general, and the mayor's failure to list the police department as a line item in the budget, in particular.
The Louisiana Government Budget Act requires Natchez to prepare a budget showing the amount of funds allocated for police purposes during a fiscal year. La. R.S. 39:1305. In that this budget is the document which authorizes expenditures from budgeted municipal funds, the expenditures and proposed appropriations for the police department should be indicated and designated as a line item in the municipal budget. Attorney General Opinion No. 87-682.
The Court in Doyle v. City of Harahan, 610 So.2d 272
(La.App. 5th Cir. 1992) decided questions 6 and the first part of 9 raised by you. In Doyle, the Court held that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. Thus, under theDoyle decision, when the mayor and board of aldermen settle on a final budget, the mayor does not have the authority to control the police department's expenditures. As long as there is a specific grant of authority in the budget, you would be eligible to attend the Chief's conference. La. R.S. 39:1305 C. (2). Similarly, you could purchase software for your Department as long as the expenditures of police funds were made only pursuant to, and in accordance with specific appropriations from a budget approved by the governing authority.
Question 6, like question 12, involves a similar principle of law. Question 12 deals with the mayor's power to assume the cost of a wrecker bill, at Village expense, on a vehicle stored by the Police Department. The duties of the mayor are described in La. R.S. 33:404 (A) (9). It reads as follows:
 A. The mayor has any of following powers, duties, and responsibilities:
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
Therefore, unless prohibited by state statute, local ordinance, or the Louisiana Constitution, and as long it is in accordance with specific appropriation from a budget approved by the governing authority, the mayor has the authority to assume the cost of a wrecker bill for a car stored by the police department. *Page 6 
La. R.S. 32:398.1(B) answers the second part to question 9 pertaining to the mayor's refusal to share ticket information with your office. The law on traffic citations is set forth in La. R.S. 32:398.1(A) and (B):
 A. All traffic enforcement agencies in this state shall provide traffic citations in appropriate form containing notices to appear, which shall be issued in books with citations in quadruplicate and meeting the requirements of this part and approved by the commissioner.
 B. The chief administrative officer of each traffic-enforcement agency shall issue these books, maintain a record of each book and each citation contained therein issued to all individual members of the traffic enforcement agency and shall require and retain a receipt for each book issued.
La. R.S. 32:398.1(B) provides that the chief of police in his capacity as the chief administrative officer of his traffic enforcement agency shall in essence serve as custodian of the traffic citation books. Thus, this office believes that the chief has the right to obtain the traffic and warrant information currently locked in the offices of the secretary and mayor.
The Louisiana Constitution, state statutes, and case law provide the answers to your questions number 10 and 11. Article6, Section 7 of the Louisiana Constitution reads as follows:
 a local governmental subdivision which has no home rule charter or plan of government may exercise any power and perform any function necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general law, if a majority of the electors for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law.
Where the municipality has the authority to regulate by ordinance in a particular field, the exercise of that authority is dependent upon whether the State Legislature has not enacted general laws on the same subject and thereby preempted the field of regulation. Rollins Environmental Services of Louisiana v.Iberville Parish Police Jury, 371 So.2d 1127 (La. 1979).
La. R.S. 33:404.1 grants the board of aldermen the authority to pay a salaried employee. This statute provides that: *Page 7 
 [t]he board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen may by ordinance increase or decrease their compensation and the compensation of an non-elected municipal officer and may increase the compensation of other elected officials. However the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected.
The power to set the manner and timing of payment derives from the board of aldermen's inherent power to fix the compensation of those listed in La. R.S. 33:404. Therefore, unless prohibited by ordinance or other state statute, the board of aldermen have the authority to pay salary and vacation pay by separate checks and to postpone paying you until the Thursday of each month when the Council meets.
In question 13, you ask at what point is a traffic citation no longer part of a Police Record. This question is addressed in La. R.S. 32:398.2 as follows:
 B. Upon the deposit of the original citation or a copy of the traffic citation with a court having jurisdiction over the alleged offense or with the traffic violations bureau as set forth herein, the original citation or copy of such traffic citation shall be disposed of only by trial in the court of proper jurisdiction or any other official action by a judge of the court, including forfeiture of the bail, or by the deposit of sufficient bail with the traffic violations bureau or payment of a fine to said bureau by the person to whom such traffic citation has been issued. However, a citation or its copy alleging a violation of R.S. 32:80 (A) shall be disposed of only by trial or acceptance of a plea in open court. [Emphasis added.]
 C. It shall be unlawful for any traffic enforcement officer or any other officer or public employee to dispose of a traffic citation or copies thereof or of the record of the issuance of the citation in a manner other than as required herein.
Under this statute, a traffic citation can only be disposed of by trial or acceptance of a plea in open court. Any disposal of a traffic citation prior to trial or acceptance of a plea in open court is unlawful. Therefore, a traffic citation will remain a part of the Police Record until it is disposed of by trial or acceptance of a plea in open court.
The response to your fifteenth question was addressed above in answer to question 1. The answer to that question relied heavily on Attorney General Opinion No. 98-469. That Opinion stated that under La. R.S. 33:423, an elected chief of police has the inherent power and authority to supervise and control his office equipment and *Page 8 
personnel on a day-to-day basis. Once the mayor and aldermen have budgeted and appropriated money for the police department, theauthority to allocate the expenditure of those funds rests withthe elected chief of police. Doyle v. City of Harahan,610 So.2d 272, 273 (La.App. 5th Cir. 1992). [Emphasis added.] The police chief only has operational control over the expenditures of the department within the line item perimeters of the appropriation within the municipality's budget.
In reliance upon the above cases and statutes, the police chief is in the best position to determine the department's needs. The chief, however, is subject to the municipality's regulations for the use of purchase orders. See La. R.S. 33:425
and Attorney General Opinion No. 93-74. It is the opinion of this office that the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon his inherent powers absent the failure of the chief to comply with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75. The authority to control police department funds on a day-to-day basis can only be utilized if it is done in compliance with the use of purchase orders according to municipal regulations. Therefore, based upon the reasoning contained in Attorney General Opinion No. 93-75, a mayor's refusal to provide you with a purchase order book would constitute an infringement upon your inherent authority to control your office's funds once the mayor has budgeted and the aldermen have appropriated by ordinance the monies to be dedicated for use by the police department.
Your seventh question complains about the mayor's refusal to divulge financial statements during monthly meetings of the Council. Your complaint invokes the provisions of the Public Records Law. La. R.S. 44:4.1 states, in pertinent part:
 A. The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect. [Emphasis added.]
The financial statements of a municipality are not listed as one of the exceptions exemptions, or limitations listed in section B of this statute. Nor are they listed as an exception, exemption or limitation in the Constitution of Louisiana or any other statute. Therefore, financial statements of a municipality are public records that are subject to disclosure. *Page 9 
La. R.S. 44:31B(1) states that "[e]xcept as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of the Chapter any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record." This right cannot be extinguished unless the custodian determines the documents are confidential in nature. La. R.S. 44:3(2) provides: "The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian." La. R.S.44:1 A (3) defines a custodian as "the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records."
Once a request is made for a public record, La. R.S. 44:33
mandates the official, who has responsibility for the record, to have the record segregated from other records under his custody. The purpose of segregating the requested record is to permit the public to reasonably view the record. If a person is denied the right to inspect or copy the record, La. R.S. 44:35 allows that person to institute proceedings for the issuance of a writ of mandamus and injunctive or declaratory relief, together with attorney's fees, costs and damages in the district court for the parish in which the office of the custodian is located. Furthermore, failure to comply with the public records law can result in criminal penalties as well. La. R.S. 44:37 provides as follows:
 Any person having custody or control of a public record, who violates any of the provisions of this Chapter, or any person not having such custody or control who by any conspiracy, understanding or co-operation with any other person hinders or attempts to hinder the inspection of any public records declared by this Chapter to be subject to inspection, shall upon first conviction be fined not less than one hundred dollars, and not more than one thousand dollars, or shall be imprisoned for not less than one month, nor more than six months. Upon any subsequent conviction he shall be fined not less than two hundred fifty dollars, and not more than two thousand dollars, or imprisoned for not less than two months, nor more than six months, or both.
In question number 8, you ask whether monies from an account set up for law enforcement can be used for other purposes. As stated above, under La. R.S. 33:423, an elected chief of police has the inherent power and authority to supervise and control his office equipment and personnel on a day-to-day basis. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate theexpenditure of those funds rests with the elected chief ofpolice. Doyle v. City of Harahan, 610 So.2d 272, 273 (La.App. 5th Cir. 1992). [Emphasis added.] The police chief only has *Page 10 
operational control over the expenditures of the department within the line item perimeters of the appropriation within the municipality's budget.
According to Attorney General Opinion No. 98-469, a separate account may not be set up in favor of the police department in absence of a local ordinance. Expenditure of monies in absence of a local ordinance remains at the discretion of the local mayor or town council. Based on the cited authority, the control of the account in question is dependent upon certain factors. If by ordinance the mayor has in fact created an account for police department expenditures, then once those funds are put into that account, the police chief has the operational control over the department expenditures. However, in the absence of an ordinance that creates an account for the police department, the mayor retains control of those monies.
We hope that this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
 Very truly yours
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _____________________ Christopher D. Matchett Assistant Attorney General