Dear Mayor Fields:
We have received your letter of January 28, 2003 requesting an opinion on the following questions:
Can the Town of Lake Providence purchase firearms for officers of its Police Department, and if so, what policies and procedures should the Town of Lake Providence adopt to immunize itself from liability arising from the use of these firearms?
Can the Town of Lake Providence impose a charge for the service of unlocking a door of a vehicle which is owned or which is in the legal possession of the person who requests that the door of the vehicle be unlocked?
With regard to the first question, LSA-R.S. 33:361 states, in pertinent part, the following:
§ 361. Municipal powers
 A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law. . .
There are numerous Louisiana Attorney General Opinions holding that in a Lawrason Act community with an elected Chief of Police, he shall have control over the administration of his department. La. Atty. Gen. Op. No. 97-393 (see also La. Atty. Gen. Op. No. 98-640, La. Atty. Gen. Op. No. 93-550, La. Atty. Gen. Op. No. 93-580, La. Atty. Gen. Op. No. 94-313)
La. Atty. Gen. Op. No. 95-135 states as follows:
 . . . the Chief of Police is the final authority in the day-to-day operation of his office and equipment in regard to the carrying out his duty of enforcement of all ordinances within the municipality and all applicable state laws. Despite this authority, the Board of Alderman have authority over the budget for the department. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. However, R.S. 33:462
requires all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance. Therefore, while the mayor is not given the power to supervise and control the police department of an elected chief of police, the chief of police's inherent authority over his department is limited in its application for the expenditure of police department funds inasmuch as it is required that all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance with all warrants drawn on the treasury expressing on its face to whom it was issue [sic], for what purpose and the ordinance authorizing the issuance of the warrant.
Therefore, it is the opinion of this office that a Lawrason Act municipality can purchase firearms for the policemen of the municipality subject to the above stated procedures.
Regarding the liability issue, there is no procedure by which a municipality can absolutely avoid liability from the use of firearms.
With regard to the second question, according to La. Atty. Gen. Op. No. 90-205, public safety officers may assist motorists who have locked themselves out of their cars by unlocking their cars for them.
La. Atty. Gen. Op. No. 92-455 not only says that law enforcement officers are permitted to provide automobile door opening/unlocking services to the public at no charge, but also goes on to say that the mission of law enforcement agencies and duties of officers are broader than simply investigating crimes or arresting criminal suspects, and include crime prevention and to some degree, assisting people in distress. Unlocking doors falls within this larger goal of law enforcement officials, as people who are locked out of their vehicles may be exposed to danger.
Because unlocking doors falls under the larger mission of law enforcement officials to protect and serve the public, it is our opinion that, subject to the policy of each law enforcement agency, law enforcement officers may unlock doors for motorists, and may take the proper procedures they deem necessary to avoid liability for damages that may occur to the vehicles, but may not impose a charge for doing so, since it falls under the duty of law enforcement officials to aid citizens in distress.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ INGRID JOHNSON ASSISTANT ATTORNEY GENERAL
IJ/ks/jy
OPINION NUMBER 90-205
January 15, 1991
90-A-2 — PUBLIC FUNDS La. Const. Art. VII, § 14, (1974)
Police and firemen assisting mortorists locked out of cars is not violation of LA. Const. Art. VII, § 14, (1974).
Mr. Stanwood R. Duval, Jr. Terrebonne Parish Attorney P.O. Box 3017 Houma, Louisiana 70361
Dear Mr. Duval:
In our opinion. it is not a violation of La. Const. Art. VII, § 14
(1974) for public safety officers, both fire and police, to assist motorists who have inadvertently locked themselves out of their cars, by assisting the motorist in unlocking their car.
Trusting this to be of sufficient information, I am,
Sincerely,
 William J. Guste, Jr. Attorney General
 Charles J. Yeager Assistant Attorney
La. Atty. Gen. Op. No. 90-205, 1991 WL 575395 (La.A.G.)
OPINION NUMBER 92-455
July 8, 1992
TO LAW OFFICERS: Authority Jurisdiction
Article VII, Section 14, Louisiana Constitution of 1974; LSA R.S. 40:1379
Law enforcement officers may provide automobile door opening/unlocking services to the public at no charge, and such does not violate La. Const. Art. VII, Sec. 14.
Honorable Jerry Luke LeBlanc State Representative, District 45 Post Office Box 5459 Lafayette, Louisiana 70502
Dear Representative LeBlanc:
You have requested an opinion as to whether, in other than emergency situations, state law allows law enforcement officers to provide automobile door opening/unlocking services to the public at no charge in direct competition with private enterprises which provide identicalservices.
Obviously, the mission of law enforcement agencies and the duties of law enforcement officers are somewhat broader than the strict requirements of investigating crime(s) and/or arresting criminal suspects. These duties include crime prevention (see for example LSA-R.S. 40:1379 with regard to State Police officers), including such things as cruising neighborhoods, checking commercial establishments, mediating disputes, etc. and, to some limited degree, assisting people in distress.
Clearly, the conduct in question comes within the broader mission of law enforcement agencies, and thus within the duties of law enforcement officers. A person who has locked their keys in their car is clearly in distress. Further, as it must be assumed that such situations usually arise when the car owner/operator is away from their home or business, leaving a stranded motorist to find assistance on his own, and then wait for the arrival of such assistance, would often expose him to danger from those less charitable who pray on the helpless. Thus, such conduct by law enforcement officers fairly comes within their mandate to prevent crime.
We are unable to find any statutory prohibition of such conduct by law enforcement officers. And, the issue of the constitutionality of such conduct was addressed in Atty. Gen. Op. No. 90-205 in which this office found that such conduct does not violate the constitutional prohibition contained in Article VII, Section 14 of the Louisiana Constitution of 1974.
Therefore, it is the opinion of this office that, within the policy of each law enforcement agency, law enforcement officers may properly assist motorists by rendering automobile door opening/unlocking services to the public at no charge, even when such services may also be provided by private enterprises.
Yours very truly
 RICHARD P. IEYOUB, Attorney General
 BY: ___________________________ NORMAN W. ERSHLER Assistant Attorney General
RPI/NWE:pb-1720o
OPINION NUMBER 97-393
November 12, 1997
77 — Officers — Local Municipal 60 — Law Officers Authority Jurisdiction
Discussion of powers of the governing authority over operation of the Police Dept. of an elected Chief of Police.
Mr. Harvie Droddy Chief of Police Town of Merryville P.O. Box 537 Merryville, LA 70653
Dear Chief Droddy:
This office is in receipt of your request for an opinion of the Attorney General regarding power to direct the operation of a police department when there is an elected Chief of Police.
This office has rendered numerous opinions holding that in a Lawrason Act community with an elected Chief of Police he shall have control over the administration of his department. In Atty. Gen. Op. No. 95-135 this office stated as follows:
 In answer to your inquiry about the power of the mayor and council over the police department in relation to that of the Chief of Police, the Chief of Police is the final authority in the day-to-day operation of his office and equipment in regard to the carrying out his duty of enforcement of all ordinances within the municipality and all applicable state laws. Despite this authority, the Board of Aldermen have authority over the budget for the department. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. However, R.S. 33:462 requires all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance. Therefore, while the mayor is not given the power to supervise and control the police department of an elected chief of police, the chief of police's inherent authority over his department is limited in its application for the expenditure of police department funds inasmuch as it is required that all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance with all warrants drawn on the treasury expressing on its face to whom it was issue, for what purpose and the ordinance authorizing the issuance of the warrant.
While the Chief of Police has control of the day-to-day operations of his department this is subject to certain statutory restrictions exercised by the governing authority. As noted by this office in Atty. Gen. Op. No. 93-666 the courts have recognized that the Chief of Police "is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots", but this office further observed this authority is subject to funds being budgeted and appropriated pursuant to municipal ordinances.
In line with this reasoning it was observed in Atty. Gen. Op. No 95-275 since the Chief of Police is in control of the day-to-day operation of the equipment of the department, the governing authority cannot tell the chief of police what car or how many he can operate except indirectly insofar as they control what is budgeted for that expense.
In that Opinion this office further stated that the governing authority cannot assign work hours for the police personnel but since the Chief of Police does not hire or fire the police officers but can only recommend individuals for hiring, the governing authority may control the number of police on the force. Setting the budget or amending the budget may result in the salaries of police officers being changed.
These observations are generalizations based upon conclusions in earlier opinions on the law relative to the power of the governing authority to direct the operation of the police department of the elected chief of police. If you have a more specific question as to the authority of the governing authority in directing the police department do not hesitate to contact us, but we hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: September 15, 1997
Date Released:
BARBARA B. RUTLEDGE Assistant Attorney General
OPINION NUMBER 98-460
January 6, 1999
60 Law Officers 71 Municipalities
Addresses general questions of authority concerning an elected chief of police and his municipal governing authority, where all are covered by the provisions of the Lawrason Act.
Honorable Vern A. Breland Chief of Police P.O. Box 1204 Sterlington, LA 71280
Dear Chief Breland:
You are the elected chief of police of the Town of Sterlington, which is governed by the provisions of the Lawrason Act, LSA-R.S. 33:321, etseq. You have presented several questions to us for resolution concerning the powers and duties statutorily granted to one holding your official position. We respond to your questions in chronological order.
Question One Under the Lawrason Act, R.S. 33:321, et seq., does the Board of Alderman have the authority to tell an elected chief of police who he can hire or fire?
Our response to your first question requires application of LSA-R.S.33:423 defining the duties of an elected chief of police, which pertinently provides:
 ". . . . .In those municipalities governed by the provisions of (the Lawrason Act) which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. . . . ."
There is now jurisprudence interpreting the foregoing statute which specifically answers your first question. In the case of Thibodeaux vs.Hernandez, 702 So.2d 1157 (La.App. 3rd Cir. 1997), the court resolved the power struggle between the board of aldermen and an elected chief of police concerning hiring and firing of police employees as follows:
 ". . . . we conclude that the Aldermen and Mayor lacked the authority to unilaterally terminate (a police officer) over the objection of the elected chief of police. . . . . . ." See Thibodeaux, supra, at page 1159.
The court further cited with approval the following language from an opinion issued by this office:
 "The ultimate decision concerning any layoffs of police personnel due to budgetary constraints rests with the board of aldermen. However, the discipline or dismissal of a police employee by the board of aldermen Is contingent upon the recommendation made by the chief of police." (Emphasis added); see Thibodeaux, supra, at page 1159 and Attorney General Opinion 93-405.
Additional language from Thibodeaux, at page 1159, directs that "R.S.33:423 vests and common sense dictates in elected chiefs of police a stake in the hiring and firing of police officers." We adopt the determination of the court, as we are required to do, and answer your first question as follows: your recommendation is required in order for the board of aldermen to hire or fire police personnel. Otherwise, the board of aldermen could "make such critical personnel decisions without the chief of police's input or concurrence" in contradiction to the directives of the court in Thibodeaux. Thibodeaux, at page 1159.
Question Two If the Board of Alderman has not enacted an ordinance that provides for Policies and Procedures regulating the employment of municipal employees, including the hiring and firing, who has the authority to do such hiring or firing, the Board of Alderman or the elected chief of police?
LSA-R.S. 33:362(A)(1) and (3) empowers the board of aldermen to provide by ordinance policies and procedures "regulating the employment of municipal employees including the hiring and firing of such employees" but as the court noted in Thibodeaux, the statute "fails to mention police officers". See Thibodeaux, at page 1159. Nonetheless, we infer from R.S. 33:423 that the board of aldermen retain appointment and dismissal authority over police personnel despite the fact that no formal procedures manual may have been adopted. The court has instructed that an elected chief of police's "input or concurrence" is mandatory concerning such "critical personnel decisions". See Thibodeaux, at pages 1158 and 1159. Again, as in the instance of dismissal of police personnel, the hiring of police personnel is contingent upon your recommendation as chief of police.
Question Three Do the employees of the police department of an elected chief of police fall under the authority of the elected chief of police or the mayor and board of alderman under Lawrason Act R.S. 33:404? I need clarification as to whether an elected chief is responsible for all aspects of his department from the hiring and firing to the daily running of his department and what role the board of alderman play in this aspect.
This office has rendered numerous opinions holding that an elected chief of police has control over the administration of his department in a Lawrason Act municipality. The chief of police is the final authority in the day-to-day operation of his office and equipment. The governing authority cannot revoke or impair the inherent powers of an elected chief of police, which powers have been defined "as the power to supervise the operation of the police department and assign its personnel and control its equipment." See Opinions 98-204, 97-393, 95-135. Again, note that the board of aldermen hire and fire police personnel, subject to your mandatory recommendation.
Question Four Does the Board of Alderman set the qualifications for the police department employees or does the elected chief of police?
While the chief of police may adopt a policy and procedure manual with respect to qualifications of potential police employees, the Board of Alderman is not bound by these criteria. Again, the ultimate authority to hire and fire rests with the Board and the chief of police cannot, by way of internal policy, disrupt or impair that authority. See Attorney General Opinion 98-204.
Question Five Can an outgoing chief of police and Board of Alderman enter into a contract for training services which will continue into another chief of police's term and affecting his budget? If so, can the contract be legally broken by the newly elected chief once his term begins?
We refrain from directly responding to this question regarding the legality of a contract with which we are unfamiliar. However, please refer to Attorney General Opinion 98-438, attached, in which we concluded that a contract involving the expenditure of municipal funds requires the approval of both the mayor and the board of aldermen. This factor would, in our opinion, be determinative of whether the new administration must continue to abide by the contract, absent any other illegality.
Question Six Does the Lawrason Act pertain the same to an elected chief of police as to an appointed chief of police?
Yes, the provisions of the Lawrason Act are equally applicable to either an appointed or an elected chief of police. An appointed chief of police enjoys the same powers as an elected chief. See Attorney General Opinion 83-11. A notable difference is that an elected chief of police may only be involuntarily removed from office through the recall election process. See Attorney General Opinion 83-523.
Question Seven Can the Board of Alderman set an elected chief of police's work hours or is this under the direct control of the elected chief of police?
The chief of police, as an elected official, is not required to establish specific working hours, but serves on a full-time basis. See Attorney General Opinion 97-431.
We hope the foregoing is helpful to you. Should you require further assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
Date Received: Date Released: January 6, 1999
KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
OPINION NUMBER 93-550
August 31, 1993
71 — OFFICERS 77 — MUNICIPALITIES R.S. 33:423, R.S. 33:462
The elected chief of police has control of the day to day operations of the police personnel and property, but expenditure of funds must be by warrant in accordance with R.S. 33:462.
Mr. Tommy Ray Williams Chief of Police P.O. Box 254 Pleasant Hill, LA 71065
Dear Chief Williams:
This office is in receipt of your request for an opinion of the Attorney General relative to the duties and powers of an elected Chief of Police with respect to the Mayor and finances for the Police Department.
The duties of chief of police are set forth in R.S. 33:423 which provides as follows:
 The marshall shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481, which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made regardless of race, color, or creed.
Pursuant to R.S. 33:404, the mayor has supervision of all municipal departments, offices and agencies "other than a police department with an elected chief of police." However, his duty requires him to prepare and submit an annual operations budget and capital improvements budget for the municipality to the board of aldermen.
This office has concluded in Attorney General Opinion Number 86-589, as attached, that the inherent authority of the chief of police to control and administer the day to day operations of the police department, includes the authority to control and administer police department property and personnel, which includes police department funds. However, the inherent authority to control these funds is subject to the requirement of R.S. 33:462 that the expenditure of those funds only be made pursuant to or in accordance with specific appropriations authorized by a municipal ordinance enacted by the board of aldermen. A similar conclusion was reached in Atty. Gen. Op. No. 90-135.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR
OPINION NUMBER 93-580
Steptember 14, 1993
71 — MUNICIPALITIES 77 — OFFICERS R.S. 33:423, R.S. 33:462
The elected chief of police has the inherent authority to control and administer police department property and funds, but the expenditure of funds is subject of control.
Chief of Police Fred Hayes Town of Henderson P.O. Box 524 Breaux Bridge, La 70517
Dear Chief Hayes:
This office is in receipt of your request for an opinion of the Attorney General in regard to operation of the police department with an elected chief of police. You ask the following questions:
 1. Who has control of the police department if the Chief of Police is an elected official;
 2. Does the mayor and the council have the right to pull equipment away from the police department claiming that there are no funds available to operate this equipment, although this equipment is at no cost to the town;
 3. Does the mayor and the council have the right to harass and humiliate the Chief of Police to the extent he has the notion to resign from office; and
 4. How legally binding is an Attorney General Opinion in a court of law.
The duties of chief of police are set forth in R.S. 33:423 which provides as follows:
 The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481, which have a chief of police elected by the qualified voters thereof, he shall make recommendation to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made regardless of race, color, or creed.
In answering your first question we note that R.S. 33:404 gives the mayor supervision of all municipal departments, offices and agencies "other than a police department with an elected chief of police." The inherent authority of the chief of police to control and administer the day to day operations of the police department, includes the authority to control and administer police department property and personnel, which includes police department funds. Atty. Gen. Op. No. 93-550.
However, that opinion further observed this inherent authority is limited in its application to the expenditure of police department funds as provided in R.S. 33:462 as follows:
 All expenditures of money for any purpose whatever shall be in pursuance of a specific appropriation made by order and in no other manner and shall be made in accordance with the provisions of R.S. 38:2211 et seq. Every warrant drawn on the treasury shall express on its face to whom issued and for what purpose allowed; and the ordinance authorizing its issue shall be cited by minute book and page, in or upon it.
Therefore, in answering your second question while the elected chief of police has the inherent authority to control and administer police department property and police department funds, this inherent authority to control those funds is subject to the requirement that the expenditure of those funds only be made pursuant to or in accordance with specific appropriations authorized by a municipal ordinance enacted by the board of aldermen.
Without understanding whether the sheriff donated a 1990 Taurus directly to the police department or to the municipality and without questioning the legality of that donation, we would conclude that any expenditures requiring municipal funds would have to follow the procedure discussed above, but if the property belongs to the police department without the expenditure of any municipal funds the chief of police has authority to control the property.
With regard to your third question we would simply state that no one should harass and humiliate another individual.
To your final question, we would advise that while an Attorney General Opinion may be persuasive, it is not binding on a court.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR
OPINION NUMBER 94-313
July 5, 1994
71 — MUNICIPALITIES 77 — OFFICERS 107 — SHERIFFS R.S. 33:404, R.S. 39:1302, R.S. 39:1309, R.S. 39:1310
Chief of Police has exclusive control over the expenditure of funds budgeted and appropriated to his department. Mayor and board of aldermen have the statutory authority to amend the municipal budget and reduce the police department's allocation of funds, if necessary.
Honorable James P. Martin, Mayor Town of Welsh P.O. Box 786 Welsh, LA 70591
Dear Mayor Martin:
You have requested an opinion of the Attorney General relative to your duties and responsibilities as they relate to the fiscal operations of the Town of Welsh (Town), a Lawrason Act municipality. You state that the Town's tax base is comprised of a 7 mill general alimony tax and a 1 cent sales tax, the latter of which is dedicated to streets, police and fire departments and recreation. The Town also generates revenues from the operation of its public utilities.
You further note that this year's police department budget will far exceed income from the sales tax revenues. Thus, public utility revenues will be used, as they are received, to supplement the budget. Public utility fund reserves have been gradually depleted. In response to this situation, you have issued an executive order to require your prior approval for any expenditures exceeding $500.00.
You specifically ask the extent to which you may exercise control over the expenditure of funds which have been budgeted and appropriated for expenditure to the elected chief of police.
The law applicable to this issue is found at LSA-R.S. 33:404 which grants the mayor the following authority:
 "(1) To supervise and direct the administration and operation of all municipal departments, offices and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law . . ."
 (4) To prepare and submit an annual operations budget and a capital improvement budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301, et seq. and any other supplementary laws and ordinances.
* * *
(8) To sign warrants drawn on the treasury for money . . . .
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police a set forth in R.S. 33:423, R.S. 33:423.2 and R.S. 33:423.3." (Emphasis added.)
As can be seen from the above, the Mayor has the power to supervise and direct the administration and operation of all municipal departments except a police department with an elected chief of police. Thus, the police department is not subject to the supervision and control of the Mayor, but rather the elected chief of police has supervision and control of his department, including its property and personnel.
This office has consistently opined that the chief's (or marshall's) authority under LSA-R.S. 33:423 to enforce all ordinances includes the granting of certain inherent powers which are necessary for him to effectively carry out his duties. In the case of Cogswell v. Town of Logansport, 321 So.2d 774 (La.App. 2nd Cir. 1974), the Court held that the general responsibility for law enforcement granted to a chief of police entails the power to supervise the operation of the department and assign its personnel and equipment, subject to the statutory authority exercisable by the mayor and board of aldermen. See also Lintini v. City of Kenner, 211 So.2d 311 (La. 1968) and Attorney General Opinion No. 86-589.
Attorney General Opinion No. 86-589, in addressing this issue, held:
 "Thus, the mayor does not have the authority to control the expenditures of the police department. The chief of police has the inherent authority to control or administer the day to day operations of the police department. This inherent authority includes the authority to control and administer police department property and personnel, which includes police department funds. This inherent authority to control those funds is subject, however, to the requirement that the expenditure of those funds only be made pursuant to or in accordance with specific appropriation authorized by a municipal ordinance enacted by the board of aldermen." (Emphasis added.)
See also Attorney General Opinion Nos. 82-1004 and 93-405. The above opinion was cited favorably in the case of John Doyle, Jr., Chief of Police for the City of Harahan v. City of Harahan and the Honorable Carlo R. Ferrara, Mayor of the City of Harahan, 610 So.2d 272 (La.App. 5th Cir. 1992).
 "We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. This is consistent with the second Circuit's ruling, on other facts, in Cogswell v. Town of Logansport, 321 So.2d 774, 779 (La.App. 1975), that the chief of police has `the power' to supervise the operation of the police department and assign its personnel and equipment . . . . He is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots. We affirm the judgment in favor of John Doyle, Jr., Harahan's chief of police, and against the City of Harahan and its mayor, Carlo R. Ferrara."
In summary, the chief has the inherent authority to control police department funds on a day-to-day operational basis. This authority is subject to said funds being budgeted and appropriated pursuant to municipal ordinance.
The preparation and submission of an annual municipal budget is governed by the statutory provisions comprising the "Louisiana Local Government Budget Act" (Budget Act). See R.S. 39:1301, et seq. The Act mandates that the municipality have a balanced budget. Sections 1302, 1309, and 1310 provide, in pertinent part, the following:
"§ 1302. Definitions
For the purpose of this Chapter:
 (1) `Political subdivision' means a parish; municipality; school board; special district created pursuant to and under the authority of Section 16 or 19 of Article VI of the Louisiana Constitution of 1974; registrar of voters; or independently elected parish offices, including the office of assessor, clerk of district court, coroner, district attorney, sheriff, and judges, but only insofar as their judicial expense funds, as provided for in Title 13 of the Louisiana Revised Statutes of 1950.
 (2) `Governing authority' means the body which exercises the legislative functions of the political subdivision."
"§ 1310. Budgetary authority and control
 A. The adopted budget and any duly authorized adopted amendments shall form the framework from which the chief executive or administrative officers and members of the governing authority of the political subdivision shall monitor revenues and control expenditures. The chief executive or administrative officer shall advise the governing authority or independently elected official in writing when:
 (1) Total revenue and other sources plus projected revenue and other sources for the remainder of the year, within a fund, are failing to meet total budgeted revenues and other sources by five percent or more.
 (2) Total actual expenditures and other uses plus projected expenditures and other uses for the remainder of the year, within a fund, are exceeding the total budgeted expenditures and other uses by five percent or more.
 (3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
 B. The written notification as required by this Section as well as any responsive action taken by the governing authority or independently elected official shall be transmitted to and retained by the chief executive or administrative officer.
 C. The adopted budget and any duly authorized amendments required by this Section shall constitute the authority of the chief executive or administrative officers of the political subdivision to incur liabilities and authorize expenditures from the respective budgeted funds during the fiscal year."
This office has previously opined in Attorney General Opinion No. 87-682 that municipalities are required by the Budget Act to prepare and submit a comprehensive budget for the municipality. The opinion concluded:
 "In that this budget is the document which authorizes expenditures from budgeted municipal funds, the expenditures and proposed appropriations for the police department should be indicated and designated as a line item in the municipal budget."
While the chief should be given the opportunity to submit input for purposes of budget preparation, it is clear from the statutes pertaining to Lawrason Act municipalities, and those comprising the Budget Act, that the authority to adopt and amend the budget is vested exclusively with the Mayor and Board of Aldermen. In other words, while the chief has exclusive control over the expenditure of his appropriated departmental funds, the mayor and board of aldermen have the statutory authority to amend the budget, thereby effecting, should circumstances warrant, a reduction in the police department budget. See Attorney General Opinion No. 93-666, a copy of which was faxed to you on Wednesday, June 15, 1994.
Trusting this answers your inquiry, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: ROBERT E. HARROUN, III Assistant Attorney General RPI/Rob3/bb 0351R
OPINION NUMBER 95-135
May 1, 1995
77 Officers — Local municipal 60 — Law Officers Authority Jurisdiction R.S. 33:432 R.S. 33:462
Discussion of powers of elected Chief of Police in relation to the governing authority.
Chief of Police Charles Scott, Sr. Maringouin Police Department P.O. Box 115 Maringouin, LA 70757
Dear Chief Scott:
This office is in receipt of your request for an opinion of the Attorney General in regard to the power of the Mayor, Council and Auditor over the Maringouin Police Department where you are the elected Chief of Police. With regard to your authority in relationship to that of the Mayor you set forth the following questions:
 1. Reducing traffic violations, citations, dropping charges;
 2. Collecting money for fines, warrants, tickets, etc. (Can auditors insist on town clerk receiving payments);
3. Hiring of a qualified employee;
 4. What rights/power do the Mayor and Council have in regards to my police department;
 5. What rights/power do I have over my police department, employees, municipality; and
 6. What rights/power do I have in regard to special grants awarded to my department, (What are my spending rights) (what are my hiring rights).
This office has stated in Atty. Gen. Op. No. 93-313 as follows:
 Thus, in summation, it is the opinion of this office that the power to dismiss citations is granted primarily to the prosecuting attorney and secondarily to the court. The court can only dismiss a citation if a legal defect exists in the proceedings or after trial for legally insufficient evidence. A mayor who has appointed a magistrate to preside over the Mayor's court relinquished all authority to dismiss citations. A chief of police may not dismiss a citation once it has been issued. Once a citation has been issued, it can be dismissed or "nolle prosequied" at the sole discretion of the prosecutor. If the citation is dismissed prior to the first witness being sworn at trial or if the citation is dismissed after the first witness is sworn at trial but with the defendant's consent, then subsequent prosecution for the charges dismissed is not barred. Upon consent of the defendant, the prosecutor may dismiss the citation even after the first witness is sworn.
Fine and forfeitures must go to the town clerk to be deposited into the town treasury in accordance with R.S. 33:422 which provides, in pertinent part, the following:
 The clerk shall be the auditor of the municipality. He shall keep a book in which he shall enter and preserve accounts of each particular fine and the accounts of each municipal officer. The treasurer shall not receive money from any source until the same has been reported to the clerk and audited and a receipt warrant issued therefor. All fines and forfeitures shall be reported by the officer collecting the same, immediately after such collection, and be paid into the treasury.
There have been numerous opinion of this office which refer to R.S. 33:432(A) which provides a elected chief of police "shall make recommendations to the mayor and board of aldermen for appointment of police personnel, * * * and for dismissal of police personnel." Thus, the final authority for hiring and firing rests with the mayor and board of aldermen upon a recommendation from the chief of police.
In answer to your inquiry about the power of the mayor and council over the police department in relation to that of the Chief of Police, the Chief of Police is the final authority in the day-to-day operation of his office and equipment in regard to the carrying out his duty of enforcement of all ordinances within the municipality and all applicable state laws. Despite this authority, the Board of Aldermen have authority over the budget for the department. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. However, R.S. 33:462 requires all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance. Therefore, while the mayor is not given the power to supervise and control the police department of an elected chief of police, the chief of police's inherent authority over his department is limited in its application for the expenditure of police department funds inasmuch as it is required that all expenditures of municipal funds be made pursuant to a specific appropriation authorized by a municipal ordinance with all warrants drawn on the treasury expressing on its face to whom it was issued, for what purpose and the ordinance authorizing the issuance of the warrant.
This is a generalization of the powers and authority with respect to the chief of police over the police department, and a more specific answer can be given to more specific questions if necessary.
The rights you have in regards to special grants will depend upon the provisions of the grant. You must comply with the rules and regulations governing grants from either the federal government or any other person or agency. However, it should be noted that the requirement of Art. VII, Sec. 9(A) that all money received by the state shall be deposited in the state treasury does not apply when it is from a grant or donation when the terms and conditions thereof require otherwise.
We hope this general information is helpful but if we can be of further assistance, do not hesitate to contact us for more specific inquiries.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By:______________________________ BARBARA B. RUTLEDGE Assistant Attorney General
Date released: April 7, 2003
INGRID F. JOHNSON
ASSISTANT ATTORNEY GENERAL