Dear Chief Chaisson:
You advise that you are the elected chief of police for the Town of Welsh, Louisiana. You advise that the town is governed by the provisions of the Lawrason Act, R.S. 33:361, et seq.
The board of aldermen are considering enacting an ordinance which allows police department personnel to take assigned vehicles home only if they live within the city limits. The proposed ordinance conflicts with your current policy of allowing police department personnel to take assigned vehicles home if they live within twenty miles of the police department.
R.S. 33:423 provides for the duties of the marshal, in pertinent part:
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. . . . . .
In Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968), the Supreme Court recognized that a chief of police of a Lawrason Act municipality is the chief law enforcement officer of the municipality and, as such, has the inherent power of supervision over the police department.
This office addressed a similar situation in Opinion 05-0224, wherein the following question was asked: "Does the mayor and board of aldermen have the authority to reasonably restrict use of police department vehicles outside the *Page 2 
town corporate limits. The issue arises from the chief of police allowing some of his officers to use police vehicles to drive to and from their out-of-town homes".
This office responded as follows:
 It is therefore our conclusion that the mayor and the board of aldermen have the authority to restrict the use of police department vehicles outside the town corporate limits and such would not infringe on the chief of police's inherent powers. It should be noted, however, that there have been numerous opinions issued by our office authorizing the twenty-four hour use of a police vehicle within and outside town corporate limits when in the exercise of official duties such as being "on call" in case of emergency. The mayor and the board of aldermen may restrict the use of motor vehicles for official business of the town, but must recognize that those "on call" using the vehicle to travel to and from home are not using the vehicle for personal use.
In Opinion 00-504, this office concluded "interference with the inherent authority of the Chief of Police would arise if the ordinance is applied to negate the instruction of the Chief of Police where he has authorized the use of police vehicles to and from work for those officers who are on "call" status". Further, see also Opinion 99-27, in which this office determined that the chief of police is authorized to assign himself and his personnel a vehicle for use in twenty-four hour tours of duty. We attach copies of Opinions 05-0224, 00-504 and 99-27 for your review.
Based upon the previous opinions of this office we conclude that the board of aldermen of the Town of Welsh may restrict the use of police vehicles to official business, but must recognize that those officers who are designated as "on call" using the vehicle to travel to and from home (including those officers who live outside the town limits) are not using the vehicle for personal use.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY CALDWELL ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg *Page 1 
60 LAW OFFICERS — Authority Jurisdiction
71 MUNICIPALITIES
77 OFFICERS — Local
Mayor and Board of Aldermen of the town of Church Point have authority to restrict the use of police vehicles outside the town limits but cannot restrict use by "on call" police personnel. Further, the Board of Aldermen of Church Point does not have authority to declare Chief of Police property or equipment surplus property and forced it to be sold.
Mr. J. Lee Wimberley, Jr.
Vidrine Wimberley
Attorneys at Law
318 South Main Street
Church Point, LA 70525
Dear Mr. Wimberley:
You have requested an opinion from our office in your capacity as attorney for the town of Church Point. You advise that the town operates under the Lawrason Act and that the board of aldermen are seeking opinions on the following issues.
 1. Does the mayor and board of aldermen have the authority to reasonably restrict use of police department vehicles outside the town corporate limits. The issue arises from the chief of police allowing some of his officers to use police vehicles to drive to and from their out-of-town homes.
 2. The police department has a "drug" dog. Because the town is a partner in a parish wide "Drug Task Force", it does not feel that this dog is necessary for the town's police operations. Does the board of aldermen have the authority, without the necessity of approval or request by the Chief of Police, to declare that the dog is surplus property and have the town sell the dog?
To address the first issue dealing with use of police department vehicles, this office stated in Attorney General Opinion 00-389, "it is an established principle that the mayor and alderman may not revoke the `inherent powers' of an elected Chief of Police of a Lawrason Act municipality to operate, control and administer police department personnel. This inherent authority, however, applies only to the official law enforcement use of municipal police vehicles."
It is therefore our conclusion that the mayor and the board of aldermen have the authority to restrict the use of police department vehicles outside the town corporate limits and such would not infringe on the chief of police's inherent powers. It should be noted, however, that there have been numerous opinions *Page 2 
issued by our office authorizing the twenty-four hour use of a police vehicle within and outside town corporate limits when in the exercise of official duties such as being "on call" in case of emergency. The mayor and the board of aldermen may restrict the use of motor vehicles for official business of the town, but must recognize that those "on call" using the vehicle to travel to and from home are not using the vehicle for personal use.
With respect to your second question dealing with "drug" dog, it has consistently been the opinion of this office that an elected chief of police has, pursuant to La.R.S. 33:423, the inherent power and authority to supervise and control his office, equipment and personnel on a day-to-day operational basis. In Doyle v. City of Harahan, 610 So.2d 272
(La.App. 5Cir. 1992), the Court held, "that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police."
This office has also observed, however, that the inherent authority of a chief of police is limited in its application by operation of certain statutory authorities granted the mayor and board of aldermen. Thus, for example, a chief of police is subject to the requirement that the expenditure of police department funds be made only pursuant to, and in accordance with, specific appropriations from a budget approved by the governing authority. Please see La.R.S. 33:462 and Attorney General Opinion Numbers 97-203, 95-275, 95-135 and 94-538.
So to specifically address your question, the board of alderman do not have the authority to declare the "drug" dog surplus property and sell the dog but could by specific budgetary appropriations limit funding for the continued maintenance and use of the "drug" dog.
We hope that this sufficiently answers your inquiry. Should you have further questions or need further assistance, do not hesitate to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:__________________________ CHARLES H. BRAUD, JR. Assistant Attorney General
 CCF, Jr./CHB, Jr./sfj *Page 1 
77 Officers
The local governing authority may, by ordinance, prohibit the personal use of vehicles by chief of police and his employees, but the ordinance may not interfere with his control of the vehicle for official law enforcement purposes.
Honorable Jeff L. James
Mayor, Town of Rosepine
P.O. Box 528
Rosepine, Louisiana 70658
Dear Mayor James:
This office is in receipt of your recent correspondence requesting we review a town ordinance[1] prohibiting the use of municipal vehicles outside the municipal limits of the Town of Rosepine. Your questions are:
 1. Does this ordinance interfere with the inherent authority of the Chief of Police?
 2. Can the Town Council pass such an ordinance? *Page 2 
 3. If the police vehicle expense is considered within the Chiefs budget, can the Mayor and Board of Aldermen adopt an ordinance such as this?
This office recently released Attorney General Opinion 00-398 to Mr. Elvin C. Fontenot, who requested the opinion on behalf of Dennis Parrett, the elected Chief of Police for the Town of Rosepine. While the questions presented in your correspondence to this office are phrased differently from the questions presented by Mr. Fontenot, (see his attached correspondence), the issues are the same. Our responses to your three stated questions are intended to be congruent with the conclusions outlined in Opinion 00-398, as we affirm herein the legal conclusions of the author of Opinion 00-398.
In response to your first question, the ordinance does not impinge upon the inherent authority of the Chief of Police insofar as it attempts to regulate the use of a municipal vehicle outside the city limits and further prevents the personal use of said vehicles. However, interference with the inherent authority of the Chief of Police would arise if the ordinance is applied to negate the instruction of the Chief of Police where he has authorized the use of police vehicles to and from work for those officers who are on "call" status. See also Attorney General Opinion 99-27, authorizing the Chief of Police to assign himself and his personnel a vehicle for his use in twenty-four hour tours of duty.
In response to your second question, the council may pass such an ordinance, because we read the ordinance to prohibit only the unauthorized personal use of town vehicles.
In response to your third question, while the police vehicle is an item of expense with the police department budget, the town retains the authority to control the personal use of the vehicle. The Chief of Police can continue to operate, repair, and control the vehicle insofar as the vehicle is used for official law enforcement purposes.
Should you have any further questions, please contact this office.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:ams *Page 1 
 Syllabus
71 — 1 MUNICIPALITIES — Special Charters
La.R.S. 33:1811
Act 109 of 1878
Discussion of the power and authority of the Chief of Police, Mayor and Board of Selectmen of the City of Plaquemine relative to control of budgeted funds, private use of police vehicles, legal counsel, and elimination of positions.
Chief C. J. Cazes
Police Department
City of Plaquemine
Post Office Box 329
Plaquemine, Louisiana 70765-0329
Dear Chief Cazes:
You have requested the opinion of this office on four questions. For the sake of clarity, each of your questions will be addressed separately below. The City of Plaquemine is governed by a special legislative charter, Act 109 of 1878, as amended. We contacted the Town Clerk and were provided with a copy of the charter, as amended, that is on file with that office. Consequently, our responses to your questions will be based upon the charter, as amended, on file with the Town Clerk, and upon applicable state law.
Section 1(a) of the Charter of the City of Plaquemine provides that "[t]he governing authority of the City of Plaquemine shall consist of a mayor, six (6) selectmen and a chief of police" (Italics added) The Charter formerly provided for a marshal, instead of a chief of police. It is noteworthy that while the position of marshal was originally appointed by the mayor and the selectmen, the chief of police is elected at large and his position is elevated to constitute a part of the governing authority of the city. It is apparent that the position of marshal was intended to be expanded when the newer position of chief of police was created, because it obviously encompassed the former position of marshal. For example, Section 2(a) of the Charter states "[t]he mayor and the chief of police (marshal) shall be elected at large by qualified voters throughout the City of Plaquemine." The parenthetical reference to the position of marshal clearly indicates that the former position of marshal is incorporated in the position of chief of police. The only description of the duties of the chief of police in the Charter is found at Section 9, and that description is only of the duties of the marshal:
 The Marshal (or Assistant Marshal) shall attend upon the Mayor's Court, and be subject to his orders and the regulations aforesaid, and is hereby vested with all the powers of a peace officer and fully authorized and empowered to serve and execute all warrants, writs, summons, orders, *Page 2 
search warrants, mittimus or commitments issued by the Mayor or any Justice of the Peace within said Town [City]; to make arrests for the infractions of the Laws of the State and the laws, ordinances and regulations of said Town [City]; to follow and arrest all offenders flying from said Town [City], all in the same manner and to the same extent as Sheriffs in the discharge of their duties, and shall be entitled to the same compensation as provided by law for Sheriffs in criminal cases.
The foregoing section of the Charter has remained unchanged, with the sole exception of the insertions of the bracketed word "City," since the original act of incorporation of the town of Plaquemine (Act 109 of 1878).
In Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968), the Supreme Court recognized that a chief of police of a Lawrason Act municipality is the chief law enforcement officer of the municipality and, as such, has the inherent power of supervision over the police department. See also, Cogswell v. Town of Logansport, 321 So.2d 774
(La.App. 2d Cir. 1975). This office has expressed its opinion, with regard to municipalities governed by special legislative charters, including the City of Plaquemine, that chiefs of police have certain inherent powers, including supervision of the police department. Attorney General Opinion Numbers 85-122, 86-145 and 87-341. We think the title "chief of police" is synonymous with "supervisor of police" and, barring some specific restriction in the city charter, confers upon the chief of police the power to supervise the day to day operations of the police department. Further support for this conclusion is found in the specific exclusion of supervision and administration of the police department by the mayor set forth in Section 2-64 of the municipal code. That section provides that the mayor shall supervise and direct the administration and operation of all municipal departments, offices and agencies, except thepolice department and the city court. However, it should be noted that the mayor and aldermen have the statutory authority to amend the municipal budget and reduce the funds allocated to the police department, if necessary. See, La. A.G. Opinion Number 94-313.
Having generally discussed the powers and duties of the chief of police under the city charter, we now address your specific questions.
Question 1: "Once the budget for the police department is approved ina dollar amount, is the Mayor allowed to hold back funds that have beenapproved by the City Council, and direct how those funds are to bespent?"
As mentioned above, by ordinance, the supervision, administration and operation of the police department is specifically excluded from the mayor's responsibilities. On the *Page 3 
other hand, we are of the opinion that you, as chief of police, have the inherent power to supervise and direct the administration and operation of the police department. Consequently, this office is of the opinion that the mayor cannot, without amending the municipal budget, withhold funds appropriated to the police department by the board of selectmen, nor can he direct that those funds be expended other than as specified in the budget.
Question 2: "Police Department administrative staff and detectives areconsidered on call 24 hours each day and have been issued unmarkedunits. May these units be used for any reason based or, the fact that anystaff member may be called to work at any time in an emergency?"
This office has issued a number of opinions recognizing the inherent authority of the chief of police to control city police vehicles and to assign a vehicle to himself for around the clock use in conjunction with his 24-hour duty hours. We are of the opinion that this authority of the chief of police extends likewise to assigning vehicles to other police personnel for use in conjunction with their 24-hour on-call status. It is pertinent to note that modern communications devices such as beepers and cell phones provide alternatives to police radios for notifying officers of emergencies.
However, the inherent authority of the chief of police extends only to functions of the police department, i.e., the law enforcement function. Otherwise, with the exception of the mayor's delegated authority as set forth in Section 2-64 of the municipal code, the control of all municipal property rests with the board of selectmen. As we have noted in previous opinions, personal use of city police vehicles must be approved by the board of selectmen. See Attorney General Opinions Number 78-1461, 80-1078, 82-1106 and 96-475, copies of which are enclosed for your convenience. However, in establishing permissible personal use of police vehicles, consideration must be given to Article VII, Section 14 of the Louisiana Constitution, which prohibits the donation or loan of the "property or things of value of the state or of any political subdivision" to any person, association or corporation. It must also be noted that personal use of employer-owned vehicles has income tax consequences which are beyond the purview of this opinion.
Question 3: "The police department and the chief are represented bythe city attorney. Payment for his services is taken directly out of thepolice budget by the city. Am I allowed by law to hire another attorneyof my choice to represent the Police Department?"
R.S. 33:1811 limits a municipality to having "no more than one municipal attorney and no more than three assistant municipal attorneys." I find no authority for the Police Department to have its own separate counsel, unless the Board of Selectmen would *Page 4 
designate an assistant city attorney as the attorney for the police department only. In any event, the municipal budget adopted for the police department would have to provide funds specifically for legal counsel for the department.
Question 4: "When members of the Police Department retire or resign,does the Mayor have the authority to terminate the positions and preventme from refilling those positions?"
As mentioned above, Section 2-64 of the municipal code specifically excludes supervision and direction of the administration and operation of the police department from the mayor's responsibilities. Therefore, the mayor does not individually have the authority to terminate positions within the department or to preclude you from filling vacancies. But, please note that we have previously rendered two opinions in which we concluded that the Board of Selectmen of the City of Plaquemine has the authority to appoint city officers and hire city employees, including police personnel. Copies of those opinions, Attorney General Opinions Number 93-53 and 96-238, are enclosed.
You informed the author of this opinion that one of your concerns is that certain federal funds or grants have been provided to the city or to your department to increase the size of your police force. The city attorney should be consulted for assistance in determining whether the elimination of positions in the police department would violate terms of grant agreements or require that the city reimburse the federal government for funds already received.
We trust this opinion adequately responds to your inquiries. Should you have further questions, please do not hesitate to contact us.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ GLENN R. DUCOTE ASSISTANT ATTORNEY GENERAL
 RPI/GRD/dra Enclosures *Page 1 
77 — Officers — LOCAL MUNICIPAL
The inherent authority of a chief of police of a lawrason act municipality to operate, control, and administer police department property and personnel applies only to the official law enforcement use of such municipal property and personnel. The governing authority may restrict by ordinance the personal use of police vehicles.
Mr. Elvin C. Fontenot, Jr.
Attorney at Law
110 E.Texas Street
Leesville, LA 71446
Dear Mr. Fontenot:
This office is in receipt of your September 28, 2000 request for an opinion of the Attorney General in regard to a town ordinance prohibiting the use of town owned vehicles outside the municipal Town of Rosepine. However, there is a concern whether such a provision would interfere with the powers of the elected Chief of Police. In your request you presented the following issues for our review:
 (1) Can the Chief of Police of Rosepine authorize his off duty officers to bring home their police unit even though they reside outside the corporate limits of the Town of Rosepine.
 (2) Does the City Council have the authority to pass an ordinance or resolution that prevents the Chief of Police from allowing his off duty officers to have their vehicles at their private residence when they are not on duty.
 (3) Does the passage of an ordinance regulating the use of police units unlawfully interfere with the Chief of Police's operation of the Police Department.
Regarding the first issue, in Cogswell v. Town on Logansport, 321 So. 2d 774, 78 (La.App. 2d Cir. 1975), the court held that the powers and duties of the police chief of a Lawrason Act municipality are not expressly defined by statute or by jurisprudence. These powers, often referred to as `inherent powers', are those which are necessary for the police chief to effectively carry out his duties. The general responsibility for law enforcement granted to a Chief of Police extends only to the law enforcement function.
This office has repeatedly observed that the Chief of Police, because of the nature of his office and his position as chief law enforcement officer of the City, has the inherent power or authority to supervise and direct the administration and day to day operations of the police department and assign its personnel and equipment. This includes assigning a police department vehicle to himself and his officers for police work.
It is an established principle that the mayor and alderman may not revoke the `inherent powers' of an elected Chief of Police of a Lawrason Act municipality to *Page 2 
operate, control, and administer police department property and personnel. Cogswell v. Town on Logansport, 321 So. 2d 774, 778 (La.App. 2d Cir. 1975). This inherent authority, however, applies only to the official law enforcement use of municipal police vehicles.
To address the second issue, the mayor and board of alderman have statutory authority or power to control and manage all municipal property and supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected Chief of Police. Even though police vehicles are municipal property, the Chief of Police has the inherent authority to control municipal police vehicles subject to the statutory authority exercisable by the mayor and board of alderman.
The Louisiana Supreme Court in Lentini v. City of Kenner, 211 So. 2d 311,312 (La. 1968) found that personal use of city police vehicles by the chief of police must be approved by the mayor and board of alderman by virtue of this statutory authority. Also, the mayor and board of alderman may specifically request that the municipal vehicles be used by the chief of police only when he is working or conducting business relative to the municipal police department.
Thus, the governing authority of the Town of Rosepine may regulate, by ordinance, the use of municipal police vehicles outside the city limits, but such ordinance may not impinge upon the chief of police's inherent authority to supervise and control his office, office equipment and office personnel. Lentini v. City of Kenner, 211 So. 2d 311, 312 (La. 1968)
Finally, regarding the third issue, an ordinance which prohibits the Chief of Police from allowing his off duty officers to have their vehicles at their private residence would be valid except in those instances where the Chief of Police authorizes use to and from work for those officers on `call' status. The ordinance would infringe upon the Chief of Police's authority in the event that there are other members of the police force who would be on `call' and are authorized by the Chief of Police to travel to and from work in an assigned police vehicle to accommodate their on `call' status.
If these individuals are not on `call', the use of the police vehicle going to and from work would be personal use which may be restricted by the governing authority. Because the ordinance at issue would prohibit only the unauthorized personal use of these vehicles, it is our opinion that the ordinance does not infringe on the Chief of Police's inherent powers. It should be noted here, however, that there have been numerous opinions from this office authorizing the twenty-four hour use of a police vehicle by a Chief of Police in the exercise of his official duties such as being on `call' in case of emergency. *Page 3 
We trust this opinion sufficiently responds to your inquiries. Should you have other questions or need further assistance, please do not hesitate to contact our office at your convenience.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________________ CHARLES H. BRAUD, JR. Assistant Attorney General
 RPI: CHB, Jr./mjb
[1] The ordinance pertinently provides:
NOW, THEREFORE, BE IT ORDAINED by the Board of Aldermen of the Town of Rosepine that no officer or employee of the town shall operate a town owned vehicle outside of one (1) mile of town limits except in an emergency, or in the official performance of their duties, "official performance of their duties" shall not include transportation to and from work and personnel's residence outside of one (1) mile of town limits, unless such personnel is permitted and approved for home storage of a town owned vehicle. Use of town owned vehicles outside of one (1) mile of town limits shall require documentation of the event giving the date, time, place and purpose, which shall be submitted in a monthly report by the department head to the mayor and board of aldermen.
BE IT FURTHER ORDAINED that the home storage of town owned vehicles shall be permitted only in individual situations in which the cost savings to the town is substantiated, or in which the health and welfare of the general public are essentially affected or in which the town council deems it to be in the best interest of the town. Home storage of town owned vehicles is prohibited unless required or permitted and approved by the town council. Criteria which merit home storage of vehicles include:
 a. Home storage of town owned vehicles shall be limited to employees who live within one 1) mile of town limits.
 b. Employees whose job duties require the use of special use vehicles or vehicles with special equipment, outside of normal working hours and for whom home storage of such vehicles can be documented as either cost effective to the city or necessary to protect the safety or health of the public.
 c. Individual requests for such exceptions must be submitted in writing to the officer of the mayor along with documentation which demonstrates that home storage is in the best interest of the town.